**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| FIRST RICHMOND BANK, N.A.,    ) | |
|         ) | |
|        Plaintiff,    ) | |
|         ) | Case No. 1:07-CV-1262-LJM-WTL |
| vs.    ) | |
|         ) | Chief District Judge Larry J. McKinney |
| CREDIT SUISSE FIRST BOSTON    ) | Magistrate Judge William T. Lawrence |

FIRST RICHMOND BANK, N.A.,

        Plaintiff,

vs.

CREDIT SUISSE FIRST BOSTON
CORPORATION, also known as Credit Suisse
Securities (USA) LLC, CREDIT SUISSE
FIRST BOSTON MORTGAGE SECURITIES
CORP., DLJ MORTGAGE CAPITAL, INC.,
TRIAD GUARANTY INSURANCE
CORPORATION, SELECT PORTFOLIO
SERVICING, INC. and BANK OF NEW
YORK,

        Defendants.

Case No. 1:07-CV-1262-LJM-WTL

Chief District Judge Larry J. McKinney
Magistrate Judge William T. Lawrence

**MEMORANDUM OF LAW IN SUPPORT OF THE BANK OF NEW YORK'S MOTION
TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6)**

MAY OBERFELL LORBER
Robert J. Palmer
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
(574) 243-4100

THACHER PROFFITT & WOOD LLP
Richard F. Hans
John P. Doherty
Thomas O. O'Connor
Two World Financial Center
New York, NY 10281
(212) 912-7400

*Attorneys for The Bank of New York*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

SUMMARY OF ALLEGATIONS AGAINST BNY ......................................................3

ARGUMENT .......................................................................................................................5

   I.  Standard Of Review ...............................................................................................5

   II.  Plaintiff Has Failed To Allege Any Basis To Impose Liability On BNY For The Alleged Conduct Of A Twice-Removed Predecessor Trustee And So Its Claims Against BNY Necessarily Fail As A Matter Of Law ......................................................................6

      A.  The Complaint Alleges Misconduct By Another Entity (Bank One) Years Before BNY Became Trustee .................................................................................6

      B.  Plaintiff has Failed to Allege Any Basis to Impose Liability for the Torts and Breaches of a Predecessor Trustee .................................................................7

      C.  Contract Claims Cloaked as Tort/Fraud Claims Should be Dismissed ........................8

   III.  Plaintiff Has Failed to Meet Conditions Precedent For Bringing This Action and So The Complaint Must Be Dismissed ....................................................................9

   IV.  The Complaint Must Be Dismissed as Plaintiff Has Failed to Allege That BNY Breached Any Express Obligation under the PSA ....................................................................10

      A.  The PSA Alone Defines the Trustee's Duties and Obligations ....................................10

      B.  Plaintiff's Factual Allegations Fail to Constitute a Cognizable Claim for Breach of Contract and So Counts XIV-XV Must be Dismissed..................................11

      C.  Plaintiff has Failed to Plead the Existence of any Fiduciary Duty Beyond That Which The PSA Expressly Imposes and Thus Count XVI Fails as a Matter of Law .............18

   V.  The Plaintiff's Civil Conspiracy Claim is Untenable As Against BNY .............................21

   VI.  New York's Martin Act Precludes Plaintiff's Common Law Causes of Action for Breach of Fiduciary Duty.....................................................................................22

CONCLUSION...................................................................................................................23

i

# TABLE OF AUTHORITIES

Page(s)

## *FEDERAL CASES*

188 LLC v. Trinity Indus., Inc., 300 F.3d 730 (7th Cir. 2002) ....................................... 5

Adams v. Meloy, No. 1:06-CV-1499 (SEB), 2007 WL 2752388 (S.D. Ind. Sept. 17, 2007) ....................................................................................................................... 5

Allen v. Cedar Real Estate Group, 236 F.3d 374 (7th Cir. 2001) ................................. 11

Anderson v. Simon, 217 F.3d 472 (7th Cir. 2000) ......................................................... 5

Automotive Fin. Corp. v. Farmer, No. IP 02-0212 C-B/S (SEB), 2002 WL 1633697 (S.D. Ind. Jul. 19, 2002) ................................................................................ 6

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007) ............................................... 5

Braxton v. Webster, No. 1:06-CV-1191 (DFH), 2007 WL 3091555 (S.D. Ind. Oct. 19, 2007) ..................................................................................................................... 7

Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620 (S.D.N.Y. 2007) ................................. 7

Cook Biotech Inc. v. Acell, Inc., No. 4:03-CV-0046 (AS), 2005 WL 1473892 (N.D. Ind. June 21, 2005) .......................................................................................... 8, 9

Dresner Co. Profit Sharing Plan v. First Fid. Bank, N.A., No. 95-CV-1924 (MBM), 1996 WL 694345 (S.D.N.Y. Dec. 4, 1996) ................................................... 20

Elliot Assocs. v. J. Henry Shroder Bank & Trust, Co., 838 F.2d 66 (2d Cir. 1985) ................... 12

Fisk v. Letterman, 424 F. Supp. 2d 670 (S.D.N.Y. 2006) ....................................... 21, 22

Goetzke v. Ferro Corp., 280 F.3d 766 (7th Cir. 2002) ............................................. 21, 22

Harris Trust and Sav. Bank v. E-II Holdings, Inc., 722 F. Supp. 429 (N.D. Ill. 1989) ........................................................................................................................... 15

Has, Inc. v. Bridgton, Inc., No. IP 98-0167-C (DFH), 1999 WL 1893209 (S.D. Ind. Sept. 20, 1999) ................................................................................................... 8

In re Bankers Trust Co., 450 F.3d 121 (2d Cir. 2006) ................................................... 16

Lorenz v. CSX Corp., 1 F.3d 1406 (3d Cir. 1993) ......................................... 12, 13, 21

Meckel v. Cont'l Res. Co., 758 F.2d 811 (2d Cir. 1985) ............................................... 10

Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 716 F. Supp. 1504 (S.D.N.Y. 1989) ......................................................................................................... 21

Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230 (LMM), 2002 WL 31027550 (S.D.N.Y. Sept. 10, 2002) .............................................. 22

Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 725 F. Supp. 656 (N.D.N.Y. 1989) .................................................................................................. 8

Page Mill Asset Mngmt. v. CSFB, No. 98 Civ. 6907 (MBM), 2000 WL 335557 (S.D.N.Y. Mar. 30, 2000) ........................................................................................ 8

Papasan v. Allain, 478 U.S. 265 (1986) ............................................................................ 5

Patterson v. State Farm Mut. Auto. Ins. Co., No. 1:05-CV-01782 (DFH), 2006 WL 3626389 (S.D. Ind. Nov. 28, 2006) ......................................................... 14

Peak Partners LP v. Republic Bank, 191 Fed. Appx. 118 (3d Cir. 2006) ..................... 15

Radin v. Albert Einstein College of Medicine of Yeshiva, No. 04 Civ. 704 (RPP), 2005 WL 1214281 (S.D.N.Y. May 20, 2005) ......................................................... 18

Renovich v. Stewardship Concepts, Inc., No. 84-C-7727 (GMM), 1989 WL 56197 (N.D. Ill. May 15, 1989) .............................................................................. 22

Semi-Tech Litig. LLC v. Bankers Trust Co., 353 F. Supp. 2d 460 (S.D.N.Y. 2005) ......................................................................................................................... 11

Stamatio v. Hurco Co., 885 F. Supp. 1180 (S.D. Ind. 1995) .......................................... 7

Williams v. Continental Stock Transfer & Trust Co., 1 F. Supp. 2d 839 (N.D. Ill. 1998) ........................................................................................................... 13, 14, 19

Ziolkowski v. Caterpillar, Inc., No. 92-CV-3111, 1993 WL 230140 (7th Cir. June 25, 1993) .......................................................................................................... 6

### STATE CASES

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382 (1987) ........................ 8

Heaton & Eadie Prof. Servs. Corp. v. Corneal Consultants of Ind., P.C., 841 N.E.2d 1181 (Ind. App. Ct. 2006).......................................................................... 18

Magten Asset Mgmt. Corp. v. The Bank of N.Y., 15 Misc. 3d 1132(A), 2007 WL 1326795 (N.Y. Sup. Ct. May 8, 2007)......................................................... 10, 11

N.Y. Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co., 163 Misc. 2d
    551 (N.Y. Sup. Ct. 1994) ............................................................................... 14

Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co., 86 N.Y.2d 685
    (1995) ............................................................................................................... 11

### FEDERAL STATUTES

15 U.S.C. § 77ooo(b) .................................................................................................. 16

### STATE STATUTES

N.Y. Gen. Bus. Law Art. 23-A § 352 ......................................................................... 22

Defendant The Bank of New York ("BNY"), by its attorneys, respectfully submits this memorandum of law and accompanying affidavit of Richard F. Hans ("Hans Aff.") in support of its Motion to dismiss Plaintiff's Complaint, insofar as each Count or part thereof relates to BNY, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed contemporaneously herewith.

### PRELIMINARY STATEMENT

By this motion, BNY seeks to dismiss claims that it participated in misrepresentations, omissions, and other wrongdoing, all of which occurred more than *three-and-a-half years before* BNY had any connection whatsoever to the matters at issue here.

Plaintiff First Richmond Bank is a sophisticated national bank that in January 2003 acquired some high-risk, high-return securities backed by mortgage loans (the "Securities"). More than four years later, Plaintiff alleges that the Securities have lost substantial value.  In response to this loss, Plaintiff sued Credit Suisse First Boston Corporation and a number of its affiliates (together, "Credit Suisse"), which acquired the mortgage loans, pooled them in a trust (the "Trust"), and caused the Trust to issue the Securities.  Plaintiff also sued Triad Guaranty Insurance Corporation ("Triad"), the company that issued a mortgage guaranty insurance policy in connection with the Securities.  Finally, Plaintiff sued BNY, which in October 2006 became successor trustee for the Trust.

Plaintiff's Complaint alleges that Credit Suisse, Triad, and BNY collectively made misrepresentations and omissions concerning the Securities that caused the Plaintiff to buy them, purportedly in violation of various common law, contractual, and statutory duties.  As detailed in Credit Suisse's motion to dismiss, Plaintiff's allegations must be dismissed because they, among other things, fail to state claims upon which relief can be granted.

More fundamentally, Plaintiff cannot possibly hold BNY liable for any alleged wrongdoing that caused Plaintiff to purchase the Securities in 2003: *BNY did not become trustee*

*for the Trust until October 2006* – three-and-a-half years after Plaintiff purchased the Securities. Indeed, Plaintiff does not even allege, nor could it, that BNY made any misrepresentations or omissions or otherwise engaged in any other wrongful conduct before Plaintiff purchased its Securities.  Knowing this, Plaintiff nevertheless lists BNY as a defendant and then makes vague, conclusory allegations that BNY engaged in wrongdoing.  Such claims are frivolous at best.

Indeed, the *only* factual allegations made in the Complaint against BNY are that, after it became Trustee, BNY did not provide Plaintiff with information concerning claims submitted and paid under Triad's mortgage guaranty insurance policy to the Certificateholders or inform public Rating Agencies, i.e., Moody's Investor Services ("Moody's"), of same.  The Pooling and Servicing Agreement (the "PSA") that governs and defines BNY's duties and obligations makes crystal clear that BNY only needs to report to investors the information it receives regarding the mortgage guaranty insurance policy claims and payments.  Here, BNY is not alleged to have received that information.  In any event, the Complaint confirms that the information BNY disclosed to Plaintiff was correct and, therefore, cannot form the basis for any cognizable claim.

Therefore, and for the additional reasons detailed below and in the Hans Affidavit, all the claims against BNY should be dismissed with prejudice.[1]

---

[1]     The Complaint is nearly identical to amended complaints recently filed by the same attorneys in the Middle District of Florida (Bankers Life Ins. Co. v. Credit Suisse First Boston Corp., et al., No. 07-CV-00690 (M.D. Fl.); the Northern District of Illinois (Sterling Federal Bank, F.S.B. v. Credit Suisse First Boston Corp., et al., No. 07-CV-2922 (N.D. Ill.); and the Northern District of Indiana (AmericanTrust F.S.B. v. Credit Suisse First Boston Corp., et al., No. 07-CV-0302 (N.D. Ind.).  The allegations in the Complaint at hand repeat nearly verbatim those made in the above noted actions and relate to the same issue of securities.  BNY has recently moved to dismiss all of the above-noted actions.

<u>S</u>UMMARY OF <u>A</u>LLEGATIONS <u>A</u>GAINST **BNY**[2]

Beginning in 2001, the Trust issued for sale several classes of securities entitled "Mortgage-Backed Pass-Through Certificates, titled Series 2001-28" (the "Certificates"). (Hans Aff., Ex. A, Complaint ("Compl."), at ¶ 14). These Certificates were backed by pools of mortgage loans. (<u>Id</u>.) Pursuant to the PSA, a Credit Suisse affiliate established the Trust, into which it and another affiliate deposited a pool of mortgage loans. (Compl. ¶ 18). Bank One, N.A. ("Bank One") was the original named Trustee. On July 1, 2004, Bank One merged into J.P. Morgan Chase & Co. ("Chase"), and Chase became successor Trustee. (Hans Aff., Ex. B, J.P. Morgan Chase & Co., Current Report (Form 8-K), at 1 (Item 2) (July 1, 2004)). Thereafter, on October 1, 2006, Chase sold its corporate trust business, pursuant to an asset-purchase agreement, to BNY, and BNY became successor Trustee. (Hans Aff., Ex. C, The Bank of New York Company, Inc., Current Report (Form 8-K), at 2-3 (Item 8.01) (October 1, 2006)).

The PSA governs the relationship among the Credit Suisse Defendants, the Trustee, and the Certificateholders, of which Plaintiff is one. The PSA expressly limits the Trustee's contractual obligations to "such duties and only such duties as are specifically set forth in this Agreement." (Hans Aff., Ex. D, PSA, at § 9.01). The PSA explains that the Trustee "shall not be liable except for the performance of such duties and obligations as are specifically set forth in this Agreement [and] no implied covenants or obligations shall be read into this Agreement against the Trustee . . . ." (Hans Aff., Ex. D, at § 9.01(a)). More specifically, the PSA confirms that the Trustee "makes no representations as to the validity or sufficiency of this Agreement, the Certificates or of any Mortgage Loan or related document." (Hans Aff., Ex. D, at § 9.03).

---

[2]   BNY respectfully refers the Court to the Memorandum of Law in Support of The Motion of Credit Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corp., DLJ Mortgage Capital, Inc. and Select Portfolio Servicing, Inc. To Dismiss The Complaint (hereinafter referred to as the "Credit Suisse Br.") for a more complete statement of the background and relevant facts of this action.

Credit Suisse published a Prospectus and Prospectus Supplement (the "ProSupp," and together with Prospectus, the "Offering Documents") in 2001, more than one year before Plaintiff purchased the securities at issue.  (Compl. ¶ 16).  Plaintiff contends the Prospectus and ProSupp were issued with the "input, advice and consent" of the Credit Suisse Defendants and Bank One as trustee.  Bank One, Plaintiff contends, was the "predecessor in interest to defendant [BNY]."  (Compl. ¶ 17).

Plaintiff maintains that the Offering Documents contained false information regarding the delinquency of loans included in the Trust. (Compl. ¶ 20).  Plaintiff alleges Bank One  "knew or should have known" the information was "false" and "materially misleading," and that "third party purchasers of the Certificates would rely on the information in the [ProSupp] when purchasing the Certificates" (Compl. ¶¶ 20-22).  Plaintiff proffers no facts or allegations to support its contention that BNY – the successor indenture trustee to JPMorgan Chase, which was the successor indenture trustee to Bank One – knew or should have known of the false information.

Plaintiff further maintains that "Bank One (predecessor in interest to defendant [BNY])" had an "obligation" to do, among other things, the following: (1) make amendments or corrections to the ProSupp; (2) inform potential third party purchasers that the insurer (Triad) declined to cover those mortgage loans procured by fraud; (3) pursue remedies available to the Trustee under the PSA "to prevent the impairment of the collateral and its concomitant diminution in value"; and (4) inform Moody's of, or generally "publish[] information" regarding, inter alia, the delinquent loans and the insurer's refusal to cover certain mortgage loans.  (Compl. ¶¶ 27-30; 33).

Plaintiff does not allege, much less explain, the line of succession from Bank One, an unrelated entity, to BNY or otherwise set forth how or when BNY became Trustee.  It alleges only that Bank One, an entity unrelated to BNY, was the original Trustee and that it is the "predecessor in interest to defendant [BNY]."  (See e.g., Compl. ¶ 17).  Bank One preceded BNY only in time.  The original Trustee, Bank One, merged with JP Morgan in July 2004.  (See Hans Aff., Ex. B).  BNY only became Trustee in October 2006, nearly four years after Plaintiff purchased its Certificates, when it acquired JP Morgan's corporate trust business through an asset-purchase agreement.  (See Hans Aff., Ex. C).[3]

## ARGUMENT

## I.

### STANDARD OF REVIEW

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  To plead a viable complaint, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  Adams v. Meloy, No. 1:06-CV-1499 (SEB), 2007 WL 2752388, at *1

---

[3]     When considering a motion to dismiss, a court may take judicial notice of documents in the public record such as those filed with the SEC.  Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir. 2000).  Moreover, documents attached to a motion to dismiss are considered part of the pleadings if they are "referred to in the plaintiff's complaint and are central to his claim."  188 LLC v. Trinity Indus., Inc., 300 F.3d 730, 735 (7th Cir. 2002).  By asserting a succession of interest from Bank One to BNY, Plaintiff has made these documents central to the pleading.  It is appropriate, therefore, to consider on a motion to dismiss the fact and nature of that succession, to the extent revealed in publicly filed documents.

(S.D. Ind. Sept. 17, 2007) (citing <u>Twombly</u>, 127 S. Ct. at 1964-65 (adding that "[f]actual allegations must be enough to raise a right to relief above a speculative level")).[4]

## II.

### PLAINTIFF HAS FAILED TO ALLEGE ANY BASIS TO IMPOSE LIABILITY ON BNY FOR THE ALLEGED CONDUCT OF A TWICE-REMOVED PREDECESSOR TRUSTEE AND SO ITS CLAIMS AGAINST BNY NECESSARILY FAIL AS A MATTER OF LAW

**A.    The Complaint Alleges Misconduct By Another Entity (Bank One) Years Before BNY Became Trustee**

The Complaint alleges misconduct by the Credit Suisse Defendants and Bank One, an entity unrelated to BNY, in the time *before* Plaintiff purchased its Certificates.  Nowhere does the Complaint allege a single act by BNY.  Nor could it.  BNY did not become Trustee until 2006, nearly three years after Plaintiff purchased the last of its certificates.

BNY did not author -- and *could not* have authored or otherwise prepared -- the Offering Documents.  In fact, the Prospectus was issued on or about October 23, 2001, the ProSupp was issued on or about November 29, 2001, and the PSA was entered into as of November 1, 2001. (Credit Suisse Br., at p. 4 n.1) – nearly five years before BNY became Trustee.  (Hans Aff., Exs. B and C).  Plaintiff alleges that it purchased the Securities in January 2003 nearly four years before BNY became Trustee.  (Compl. ¶ 28).  Even if the Trustee at that time had an obligation

---

[4]     Plaintiff's claims against BNY arise under the PSA, which provides that it "shall be construed in accordance with and governed by the substantive laws of . . . New York . . . and the obligations, rights and remedies of the parties hereto and the certificateholders shall be determined in accordance with [New York] laws" with respect to the conflict of laws issue.  (Hans Aff., Ex. B, § 11.03).  "Indiana's choice of law doctrine favors contractual stipulations between parties as to governing law."  <u>Automotive Fin. Corp. v. Farmer</u>, No. IP 02-0212 C-B/S (SEB), 2002 WL 1633697, at *1 (S.D. Ind. Jul. 19, 2002) (citing <u>Hoehn v. Hoehn</u>, 716 N.E.2d 479, 484 (Ind. Ct. App. 1999).  As to Plaintiff's alleged extra-contractual tort claims, controlling authority from Indiana and New York is similar if not identical.  Under such circumstances, where the choice of law is not outcome determinative, it is not necessary for a court to engage in a choice of law analysis.  <u>See</u> <u>Ziolkowski v. Caterpillar, Inc.</u>, No 92-CV-3111, 1993 WL 230140, at *4 n.2 (7th Cir. June 25, 1993).  To the extent the Court determines that Indiana law applies to any or all of the causes of action alleged in the Complaint, BNY has provided case law and standards for Indiana law in this memorandum as appropriate.  In nearly all instances, the law of New York and that of Indiana are indistinguishable with respect to the allegations herein.

to investigate the viability of the loans in the pool or otherwise confirm the information it was receiving from the Depositor or Servicer, and it did not, BNY was not that Trustee and so could not possibly have been involved in any wrongdoing or uttered any misrepresentation which allegedly caused Plaintiff to purchase the Securities.

Plaintiff cannot allege that it justifiably relied on misrepresentations by BNY or that BNY participated in a civil conspiracy when BNY had no involvement with any of the parties or wrongdoing during the relevant times alleged in the Complaint.  This temporal impossibility necessarily eviscerates Plaintiff's direct claims of breach of fiduciary duty and civil conspiracy against BNY.  See, e.g., Braxton v. Webster, No. 1:06-CV-1191 (DFH), 2007 WL 3091555, at *3 (S.D. Ind. Oct. 19, 2007) (citing Tregenza v. Great American Communications, Co., 12 F.3d 717, 718 (7th Cir. 1993) ("[I]f a plaintiff 'pleads facts that show his suit is time-barred or otherwise without merit, he has pleaded himself out of court.'"); Stamatio v. Hurco Co., 885 F. Supp. 1180, 1186 (S.D. Ind. 1995) (citing Sears v. Likens, 912 F.2d 889, 892 (7th Cir. 1990) (dismissing a fraud claim because the plaintiff's complaint "lumps all the defendants together and does not specify who was involved in what activity") (internal quotations omitted).

**B.**     **Plaintiff has Failed to Allege Any Basis to Impose Liability for the Torts and Breaches of a Predecessor Trustee**

The impossibility of any direct liability for prepurchase conduct notwithstanding, Plaintiff fails to allege any basis, nor could it, to impose successor liability on BNY.  As set forth above, supra, at p. 5, Bank One merged with JP Morgan Chase in 2004.  It was not until BNY purchased the assets of JP Morgan's trust business in the fall of 2006 that BNY became Trustee. (Hans Aff., Ex. B).  In an asset purchase, where one company sells or otherwise transfers its assets to another, the latter does not as a matter of law assume the liabilities of the prior business. See, e.g., Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620, 626 (S.D.N.Y. 2007) (citation omitted)

("In general, under New York law, a corporation that acquires the assets is not liable for the torts of its predecessor"); see also Has, Inc. v. Bridgton, Inc., No. IP 98-0167-C (DFH), 1999 WL 1893209, at *14 (S.D. Ind. Sept. 20, 1999) (citing Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1233 (Ind. 1994) (holding that "when one corporation transfers or sells its assets to another, the latter corporation does not assume the debts and liabilities of the former"). Plaintiff does not allege any cognizable basis to impose on BNY liability springing from the purported conduct of a predecessor trustee.

**C.    Contract Claims Cloaked as Tort/Fraud Claims Should be Dismissed**

Under New York law, claims sounding in tort and fraud, here breach of fiduciary duty and civil conspiracy, should be dismissed when they do not state an independent basis for the tort or fraud outside of the parties' contractual relationship. "It is well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987) (dismissing negligence and gross negligence claims because each "is merely a restatement, albeit slightly different language, of the 'implied' contractual obligations asserted in the cause of action for breach of contract"); Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 725 F. Supp. 656, 662-63 n.3 (N.D.N.Y. 1989) (dismissing tort claims where parties' relationship largely governed by contract); Page Mill Asset Mngmt. v. CSFB, No. 98 Civ. 6907 (MBM), 2000 WL 335557, at *8 (S.D.N.Y. Mar. 30, 2000) (dismissing claim of unjust enrichment where events forming basis "arise out of the same subject matter as the indenture") (internal quotations omitted).[5]

---

[5]    Akin to New York's requirement, "[i]t is well-settled under Indiana law that a fiduciary relationship may not be predicated on an arm's length, contractual agreement." Cook Biotech Inc. v.

### III.

### PLAINTIFF HAS FAILED TO MEET CONDITIONS PRECEDENT FOR BRINGING THIS ACTION AND SO THE COMPLAINT MUST BE DISMISSED

As a threshold, the PSA bars Certificateholders, such as Plaintiff, from instituting a lawsuit or bringing any action in law or equity with respect to the PSA unless the following conditions precedent are met:

- "[S]uch Holder previously shall have given to the Trustee a written notice of an Event of Default and of the continuance thereof" and

- "[T]he Holders of Certificates evidencing not less than 25% of the Voting Rights evidenced by the Certificates shall also have made written request upon the Trustee to institute such action, suit or proceeding in its own name as Trustee hereunder and shall have offered the Trustee such reasonable indemnity as it may require against the costs, expenses, and liabilities to be incurred therein or thereby" and

- "[T]he Trustee, for 60 days after its receipt of such notice, request or offer of indemnity, shall have neglected or refused to institute any such action, suit or proceeding" and

- "[I]t being expressly covenanted by each Certificateholder with every other Certificateholder and the Trustee, that no one or more Holders of Certificates shall have any right in any manner whatever by virtue or by availing itself or themselves of any provisions of this Agreement to . . . enforce any right under this Agreement, except in the manner herein provided and for the common benefit of all Certificateholders . . . ."

(Hans Aff., Ex. D, at § 11.07).

Plaintiff, once again, has failed to plead that it has given the Trustee written notice of any Event of Default. In fact, it has given no such notice. Plaintiff also fails to plead that

---

Acell, Inc., No. 4:03-CV-0046 (AS), 2005 WL 1473892, at *7 (N.D. Ind. June 21, 2005) (citing Olcott Int'l & Co., Inc. v. Micro Data Base Sys., Inc., 793 N.E.2d 1063, 1073 (Ind. Ct. App. 2003). In that respect,   the Indiana Supreme Court has frowned upon "the temptation to convert every contract claim into a tort action." Cook Biotech Inc., 2005 WL 1473892, at *7 (citing Greg Allen Constr. Co., Inc. v. Estelle, 798 N.E.2d 171, 173 (Ind. 2003) (citations omitted) (noting the incentive to seek special damages prompted some plaintiffs "to seek to frame a contract breach as a negligence claim"). In Cook Biotech the court rejected plaintiffs' attempts to plead breach of fiduciary duty in an action, as is the case here, that was clearly limited to a breach of contract dispute. 2005 WL 1473892, at *8. The court added that "[i]n light of the well-established rule that contractual agreements do not give rise to a fiduciary duty, it is clear that [plaintiffs] must demonstrate the existence of an independent fiduciary relationship that arose from circumstances beyond the underlying contractual duties and obligations of [defendant to sustain their claim for breach of fiduciary duty]." Id.

Certificateholders holding 25% of the Voting Rights have made any request upon the Trustee or given the Trustee 60 days to commence an action or otherwise offered to hold the Trustee harmless.  No such demand has been made and indeed Plaintiff *admits* that it has not done so and that it does not represent 25% of the Voting Rights.  (Compl. ¶ 159).  Absent such notice and absent an unsuccessful demand coming from those holding 25% of the Certificate Voting Rights, Plaintiff may not commence this action.  The Complaint therefore must be dismissed in its entirety.

**IV.**

**THE COMPLAINT MUST BE DISMISSED AS PLAINTIFF HAS FAILED TO ALLEGE THAT BNY BREACHED ANY EXPRESS OBLIGATION UNDER THE PSA**

Even absent the patent failure of conditions precedent, Counts XIV, XV and XVI necessarily fail to state a cause of action for breach of contract or breach of fiduciary duty as against BNY.

**A.**     <u>The PSA Alone Defines the Trustee's Duties and Obligations</u>

The PSA represents what is commonly known as a trust indenture, creating a trust to hold the assets that back or act as collateral for certain certificates sold to investors.  The Trustee, also known as an indenture trustee, is charged under the PSA with specific and limited *contractual* duties prior to an Event of Default.  An indenture trustee's limited duties prior to an Event of Default is well-established in a long line of case law.  Prior to an Event of Default, unlike an ordinary trustee, the indenture trustee is "like a stakeholder whose duties and obligations are *exclusively defined* by the terms of the indenture agreement."  <u>Meckel v. Cont'l Res. Co.</u>, 758 F.2d 811, 816 (2d Cir. 1985) (emphasis added); <u>see also</u> <u>Magten Asset Mgmt. Corp. v. The Bank of N.Y.</u>, 15 Misc. 3d 1132(A), 2007 WL 1326795, at *6 (Sup. Ct. N.Y. Cty. May 8, 2007) (the indenture trustee's obligations are defined by the indenture rather than the common law of

10

trusts); <u>Semi-Tech Litig. LLC v. Bankers Trust Co.</u>, 353 F. Supp. 2d 460, 472 (S.D.N.Y. 2005) (quoting <u>LNC Invs., Inc. v. First Fid. Bank, N.A.</u>, 935 F. Supp. 1333, 1346 (S.D.N.Y. 1996) (holding that "the pre-default duties of an indenture trustee . . . generally are limited to the duties imposed by the indenture.") (internal quotations omitted).[6]

Here, the PSA expressly provides that "the duties and obligations of the Trustee shall be determined *solely* by the express provisions of this [PSA]." (Hans Aff., Ex. D, at § 9.01(a) (emphasis added)).  As such, one may look only to the provisions of the PSA to determine what the Trustee is and was required to do, how it was to do so and what liabilities it may incur.

**B.      Plaintiff's Factual Allegations Fail to Constitute a Cognizable Claim
         for Breach of Contract and So Counts XIV-XV Must be Dismissed**

It is well-settled that where an agreement sets forth "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises," that event is a condition precedent that must be strictly enforced before any associated obligation may arise.  <u>Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.</u>, 86 N.Y.2d 685, 690, 636 N.Y.S.2d 734 (1995) (citing Restatement [Second] of Contracts § 224 (1981)); <u>see also</u> <u>Allen v. Cedar Real Estate Group</u>, 236 F.3d 374, 381 (7th Cir. 2001) (citing <u>Dvorak v. Christ</u>, 692 N.E.2d 920, 924 (Ind. Ct. App. 1998) ("A condition precedent is '… a condition which must be fulfilled before the duty to perform an already existing contract arises.").  Nowhere is that maxim more binding than in the indenture trustee context, where absent such strict compliance with the terms of the indenture, there can be no duty to perform,

---

[6]      An "Event of Default," as defined in the PSA, requires only that the Trustee "exercise such of the rights and powers vested in it by this Agreement, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs."  (Hans Aff., Ex. D, at § 9.01).  However, there has been no "Event of Default," and none is alleged, so the Trustee's duties are limited to those in the PSA.  <u>See</u>, <u>e.g.</u>, <u>Semi-Tech Litig.</u>, 353 F. Supp. 2d at 472 (noting that "the trustee must in a post-default context must act prudently, but *only in the exercise of those rights and powers granted in the indenture*") (emphasis added); <u>Magten Asset Mgmt.</u>, 2007 WL 1326795, at *7 (same).

and an action premised on the failure to perform will be dismissed. See, e.g., Elliot Assocs. v. J. Henry Shroder Bank & Trust, Co., 838 F.2d 66, 71 (2d Cir. 1985) ("[S]o long as the [indenture] trustee fulfills its obligations under the express terms of the indenture, it owes the debenture holders no additional, implicit pre-default duties or obligations except to avoid conflict of interest.").

Here, the obligation of the Trustee is set forth in Section 4.04 of the PSA, entitled "Monthly Statement to the Certificateholders," as follows:

> Trustee shall prepare and cause to be made available to each Certificateholder . . . a statement setting forth . . . the number and principal amount of claims submitted and claims paid under the TGIC Policy during the proceeding month and the number and principal amounts of claims submitted and claims paid under the TGIC Policy. . . .

> *The Trustee's responsibility for disbursing the above information to the Certificateholders is limited to the availability, timeliness and accuracy of the information derived from each Servicer ...*

> The Trustee may fully rely upon and shall have no liability with respect to information provided by any Servicer.

(Hans Aff., Ex. D, at § 4.04(a)(xiv)) (emphasis added).

Section 4.04 *explicitly limits* the Trustee's duty to acquire and report only that information it *receives*. (Hans Aff., Ex. D, at § 4.04(a)). Section 4.04 further provides that the Trustee has no duty to recompute, recalculate or verify the accuracy of any resolution, certificate, statement, opinion, report, document, order or other instrument so furnished to the Trustee." (Id.). Indeed, the Trustee's sole duty upon the receipt of a report is to examine the report and determine whether it conforms to the requirements of the PSA. (Hans Aff., Ex. D, at § 9.01).

Courts have uniformly dismissed actions that allege facts analogous to the instant action. For example, in Lorenz v. CSX Corp., 1 F.3d 1406 (3d Cir. 1993) (applying New York law), plaintiff-debentureholders brought an action against an indenture trustee for breach of the

implied covenant of good faith and fair dealing, arising from the indenture trustee's failure to inform them of, among other things, letter agreements between the trustee and a third party.  Id. at 1414.   The Lorenz court conceded that it would have been advantageous for the debentureholders to have been informed of the letter agreements, as it would have informed them of potential violations of securities laws that directly impacted their investment, nevertheless, the court held that:  "so long as an indenture trustee fulfills its obligations under the express terms of the indenture, it owes the debentureholders no additional, implicit duties or obligations, except to avoid conflicts of interest.  Id. at 1416 (citing Elliot Assocs., 838 F.2d at 71).   Accordingly, the Third Circuit in Lorenz affirmed the district court's dismissal of the claim against the indenture trustee.

Similarly, in Williams v. Continental Stock Transfer & Trust Co., 1 F. Supp. 2d 839 (N.D. Ill. 1998), which involved factual allegations very similar to those alleged herein, the purchaser of collateralized mortgage debentures brought suit against the indenture trustee for breach of contract and breach of fiduciary duty.  The plaintiff alleged that the trustee breached its duties by failing to inspect certain documents prior to the closing of the bond sale and to ensure that valid title to the mortgage loans was transferred at the closing.  Id. at 840.  As here, the plaintiff attempted to rely on a provision of the indenture that, in relevant part, provided:

> [o]n or before the Start-Up Date and as a condition to the obligations of the Servicer and the Trustee under this Agreement, the [issuer] shall deliver documents … to the Trustee, which shall be in form and substance satisfactory to the Trustee.

Id.  Dismissing the claims for breach of contract and breach of fiduciary duty, the Court rejected plaintiff's attempt to "impose liability on the [indenture trustee] for failing to obtain documents whose delivery was a precondition to the [trustee] having any obligation …"  Id. at 814.  The Court added that the indenture trustee had no obligations until the issuer delivered the

13

documents, and it "turns the language completely around to argue, as the [plaintiff] does, that the section imposes obligations on [the indenture trustee] as opposed to the [issuer]." Id. at 840-41. Critical to the Court's decision was its determination that the plaintiff's argument to impute liability to the indenture trustee was simply "an attempt to evade well-settled law concerning the limited nature of an indenture trustee's fiduciary duties." Id. at 841 (citing Elliot, 838 F.2d at 71; LNC Invs., 935 F. Supp. at 1347 (noting "an indenture trustee's duties are 'strictly limited' to those contained in the indenture …").

In sum, the Trustee may rely on the information it has received from the Servicer and need not independently confirm the information it has received. With that in mind, claims of breach of contract necessarily fail. The Complaint itself alleges that the Servicer "fail[ed] to supply the Trustee with complete and accurate information regarding the mortgage loans constituting the pool . . . ." (Compl. ¶ 131). If the information presented to the Trustee is in the proper form, and there is no allegation that it was not, Plaintiff may not be heard to complain that the Trustee presented the information as received and in accordance with its obligations under the PSA.

    (i)    The PSA Insulates BNY From Liability for Information It has Received From Other Sources and Delivers to Third Parties

In this same vein, the indenture expressly may limit the obligations and liability of the indenture trustee for information produced to bondholders (or any third party), and courts uniformly have upheld such limitations.[7] See, e.g., N.Y. Med. Care Facilities Fin. Agency v. Bank of Tokyo Trust Co., 163 Misc. 2d 551, 556 (Sup. Ct. N.Y. Co. 1994) (citing Dubovsky &

---

[7]    Similarly, the Seventh Circuit has concluded that "Indiana courts recognize 'that where a contract contains a limiting or qualifying provision, that provision may not be avoided by casting a suit for breach of contract as a tort.'" Patterson v. State Farm Mut. Auto. Ins. Co., No. 1:05-CV-01782 (DFH), 2006 WL 3626389, at *4 (S.D. Ind. Nov. 28, 2006) (citing Lewis v. Methodist Hosp., Inc., 326 F.3d 851, 854 (7th Cir. 2003)).

Sons, Inc. v. Honeywell, Inc., 89 A.D.2d 993, 994-95 (2d Dep't 1982) (noting that with respect to an indenture "it has been consistently held that exculpatory clauses . . . intended to insulate one . . . from liability . . . will be enforced); see also Peak Partners LP v. Republic Bank, 191 Fed. Appx. 118, 125 (3d Cir. 2006) (applying New York law) (noting that the indenture trustee's general duty not to be negligent is limited by the trustee's "right to rely on any document believed by it to be genuine"); Harris Trust and Savings Bank v. E-II Holdings, Inc., 722 F. Supp. 429, 443 (N.D. Ill. 1989), aff'd, 926 F.2d 636 (7th Cir. 1991) (holding that "absent any specific requirement in the Indentures, [there is] no obligation under New York law, the [Trust Indenture Act of 1939 (the "TIA")], or rules and regulations issued under authority of the TIA to furnish information . . . other than the certificates and opinions expressly provided for").

Here, the PSA provides that "[t]he Trustee makes no representations as to the validity or sufficiency of this Agreement, the Certificates or of any Mortgage Loan or related document." (Hans Aff., Ex. D, at § 9.03). Moreover, the PSA limits the Trustee's obligations and liability as to that information which it has received and must deliver to any party. Specifically, § 9.02 of the PSA ("Certain Matters Affecting the Trustee") provides that:

> i.   the Trustee may request and rely upon and shall be protected in acting or refraining from acting upon any resolution, Officer's certificate, certificate of auditors, Servicing Officers or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties . . . believed by it to be genuine . . .;
>
> ii.  prior to the occurrence of an Event of Default . . ., the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document. . . .

(Hans Aff., Ex. D, at § 9.02).  There is no obligation on the Trustee, therefore, to conduct an independent investigation or verification of the information it receives from any source, including the Seller, Servicer or Depositor.

Plaintiff further does not allege that it (or any other Certificateholder) complained about the alleged failure to receive insurance claim information at the relevant time, gave notice, written or otherwise, to the Trustee concerning same or sought to declare a default under the PSA for the Trustee's alleged failure to provide such information.[8]

(ii)    Count XIV (Information to Rating Agencies) Fails to State a Cause of Action for Breach of Contract

Count XIV, entitled "Breach of Contract Against [BNY] (Information to Ratings Agencies)" utterly fails to state a claim.  Citing Section 11.05 of the PSA and referring to those allegations found in paragraphs 1-37 of the Complaint, the Plaintiff contends that BNY breached its obligation to notify the Ratings Agencies of certain information. Specifically, the Plaintiff contends that BNY breached its obligations under the PSA by failing to notify the rating agency, Moody's, and the Certificateholders that there were numerous loan deficiencies and defaults in the pool, that SPS had not enforced the rights against the Seller and that the insurer had declined

---

[8]    The Complaint fails to allege in any respect how BNY's notation in its "monthly report" to Plaintiff regarding insurance claim information caused, in any manner, the economic harm allegedly suffered by Plaintiff.  (See Compl. ¶¶ 145-46).  This is fatal to Plaintiff's claims.  See, e.g., In re Bankers Trust Co., 450 F.3d 121 (2d Cir. 2006).  In Bankers Trust, the noteholders brought an action against the indenture trustee claiming breach of the statutory duties under the Trust Indenture Act, breach of contractual duties under the indenture at issue, and breach of fiduciary duties under New York law.  Id. at 122.  The gravaman of the noteholders' complaint was that the trustee had breached its duty to the noteholders by failing to properly inspect certain certificates provided by the obligor of the loan to ensure the certificates conformed to the requirements of the indenture.  Id. at 125-26 (citing 15 U.S.C. § 77ooo(b)).  Nevertheless, the Second Circuit determined that even if the trustee had fulfilled its obligations and performed its duties, this would not have prevented the noteholders' loss.  Id. at 130.  The Plaintiff here faces similar obstacles to allege loss resulting from the alleged action (or inaction) on the part of BNY.

to cover many of the mortgages.[9]   Had this information been provided, Plaintiff maintains, Moody's would have downgraded its rating on the certificates earlier.  (Compl. ¶¶ 27-30; 33). Plaintiff alleges that, but for BNY's failure to act in the interests of the Certificateholders and properly perform its obligations as Trustee, Plaintiff would not have purchased the Securities. (Compl. ¶¶ 155-158).

But Section 11.05 of the PSA provides only that BNY must notify the rating agencies in writing "(a) of any substitution of any Mortgage Loan; (b) any payment or draw on any insurance policy applicable to the Mortgages Loans; (c) of the final payment of any amount owing to a Class of Certificates; (d) any Event of Default under this Agreement; and (e) in the event any Mortgage Loan is repurchased in accordance with this Agreement."  (Hans Aff., Ex. D, at §11.05).  The Complaint is devoid of any allegation, however, that BNY failed to notify the rating agencies of any such occurrence.  Parsing the Complaint, the reader finds no allegation that a mortgage loan was substituted, that there has been any payment or draw on any insurance policy, that an Event of Default has occurred (or even declared), that there has been any final payment of any amount owing to the Class or that any mortgage loan has been repurchased.  The Complaint suggests only in earlier paragraphs that BNY failed to notify the Ratings Agencies of loan delinquencies or alleged failures to enforce rights under the loans or insurance policies. (Compl. ¶¶ 27-30).  But, once again, the Trustee is not obligated under the PSA to do so and no such obligation may be implied.

Central to Plaintiff's claim is its contention that the Ratings Agencies would have downgraded the bonds earlier had they known of the purported delinquencies in the pool; and,

---

[9]     Although only two paragraphs in length, Count XIV (Information to Ratings Agencies) never actually states that BNY breached a specific obligation to report information to a Rating Agency.  It only states that Plaintiff was an intended third-party beneficiary of the PSA and then broadly asserts BNY's obligation to report certain information.

had the Ratings Agencies downgraded sooner, Plaintiff would not have purchased the Certificates in the first instance or would have sold sooner. (<u>See</u> Compl. ¶¶ 32-35) Curiously, by Plaintiff's own admission, Moody's began to downgrade the bonds as early as January 2005. By October 2006, at or about the time BNY became Trustee, Moody's had already downgraded the I-B-2 Certificates no less than six (6) times to what then was a "Caa1" rating. Likewise, the I-B-3 Certificates were downgraded three times by September 2005 (a full year before BNY became Trustee) down to a "Ca" rating. The very downgrades which Plaintiff claims would have protected its interests, therefore, had occurred *well before* BNY ever became Trustee. (Compl. ¶ 32 n.6). With the precipitous fall in the ratings of the Certificates over an eighteen month period, Plaintiff may not now complain that BNY did not do enough to inform Moody's of the state of the pool.

**C.     <u>Plaintiff has Failed to Plead the Existence of any Fiduciary
Duty Beyond That Which The PSA Expressly Imposes
and Thus Count XVI Fails as a Matter of Law</u>**

(i)     <u>The Trustee Owes No Duty to Certificateholders Other Than Those Specified in
the PSA</u>

As demonstrated, Plaintiff has failed to allege BNY breached any contractual duty to Plaintiff expressly imposed by the PSA. In such circumstances, in order to sustain its claim for breach of fiduciary duty, "a plaintiff must first show that a fiduciary duty exists between him and the defendant." <u>Radin v. Albert Einstein College of Medicine of Yeshiva</u>, No. 04 Civ. 704 (RPP), 2005 WL 1214281, at *1 (S.D.N.Y. May 20, 2005) (applying New York law); <u>see also</u> <u>Heaton & Eadie Prof. Servs. Corp. v. Corneal Consultants of Ind.</u>, P.C., 841 N.E.2d 1181, 1189 (Ind. App. Ct. 2006) (citing <u>Crowe, Chizek, and Co., LLP v. Oil Tech., Inc.</u>, 771 N.E.2d 1203, 1210 (Ind. Ct. App. 2002) ("For a fiduciary relationship to exist, there must be confidence by one party in another, and the party reposing the confidence must also be in a position of inequality,

dependence, weakness or lack of knowledge."). But the Trustee under the PSA owes no duty, fiduciary or otherwise, beyond that which it is contractually bound to perform under the PSA. See, e.g., Williams, 1 F. Supp. 2d at 841 (dismissing breach of fiduciary duty claims against the indenture trustee because "to allow such an informal fiduciary relationship in the indenture trustee context would swallow the limitation on an indenture trustee's fiduciary duty prior to a default.").

Here, Plaintiff has failed, once again, to identify the existence of some special relationship with BNY separate and apart from the Trustee's contractual obligations under the PSA. Having performed its obligations under the PSA, BNY, as an indenture trustee, may not be subjected to liability absent an extra-contractual, special and privity-like relationship with Plaintiff - a relationship that Plaintiff does not even attempt to plead herein.

(ii)     No Duty Outside of the Specific Duties Under The PSA May Be Implied

Failing to allege that BNY breached any pre-default obligation, the Plaintiff proposes, incredibly, that the Trustee had a duty to warn and thereby prevent Plaintiff from investing in the Certificates. In other words, according to Plaintiff, the Trustee -- because it allegedly "knew or should have known" of alleged delinquencies or misrepresentations regarding the mortgage loans included in the trust -- had an implied fiduciary obligation to an unidentified future third-party purchaser in the secondary market to obstruct the original sale of the Certificates. Plaintiff's claims are unsustainable.[10]

Plaintiff may not impose an implied obligation on BNY to ensure the sufficiency, or non-delinquency, of each and every loan included in the pool. Courts have universally rejected

---

[10]     This claim fails also because, as has already been established, BNY was not the Trustee at the time the loans were included in the pool and the certificates were first offered, nor was it the Trustee when the Plaintiff purchased its Certificates. Plaintiff's claim is no less deficient for its failure to specify what loans it claims to have been delinquent at the time of its purchase.

19

implied pre-default duties or, for that matter, any implied duty to warn future purchasers.  See

Dresner Co. Profit Sharing Plan v. First Fid. Bank, N.A., No. 95-CV-1924, 1996 WL 694345

(S.D.N.Y. Dec. 4, 1996).  Dresner is on all fours.  There, the plaintiff-bondholders alleged that

the indenture trustees "knew or should have known that the [issuer's] financial condition was

deteriorating rapidly and that the value of the collateral was likewise declining." Id. at *4.  The

indenture provided that the indenture trustees were required "to examine certain evidence,

reports and documents." Id.  Given the trustees' alleged knowledge of the issuer's financial

condition and the express requirement to examine certain evidence, the bondholders argued that

the trustees should have taken further "steps either to inquire as to the location and condition of

the collateral or to take advantage of their rights to inspect [the issuer's] books and records

relating to the collateral." Id. at *5.  In short, as here, the plaintiffs were alleging the indenture

trustees had an implied duty to protect the bondholders' investment above and beyond the

express terms of the indenture.

The court rejected the bondholders' argument out of hand, and granted the trustees'

motion to dismiss.  There, as here, plaintiff did not "cite any express, non-discretionary duty

under the indenture which the trustees failed to satisfy,"  and thus the Court flatly refused to find

an implied pre-default obligation on the indenture trustees to act on information that was

arguably just as accessible to the bondholders.

Thus, there is no basis on which to assert the liability of BNY.  The PSA permits no

implied duties and no obligation to do anything more than what the contract expressly requires.

And, more importantly, Plaintiff offers (i) no basis to impose any extra-contractual duty or

obligation, (ii) no facts from which to glean some special and separate relationship, and (iii) no

facts from which one might suppose a breach of any imagined duty.  Moreover, the express

terms of the PSA illustrate BNY is expressly insulated from liability.  Without more, and there is

no more to be had, Plaintiff cannot sustain a claim that BNY breached any fiduciary duty.  See

e.g., Lorenz, 1 F.3d at 1415 (citing Broad v. Rockwell Int'l Corp., 642 F.2d 929, 957-58 (5th

Cir). (en banc) (applying New York law) ("Unless the indenture trustee has deprived

debentureholders of a right or benefit specifically provided to them in the indenture, there is no

implied covenant of good faith and fair dealing"); Metropolitan Life Ins. Co. v. RJR Nabisco,

Inc., 716 F. Supp. 1504, 1517-22 (S.D.N.Y. 1989) (finding no breach of implied covenant under

New York law where corporation's incurrence of debt to fund leveraged buyout depleted the

value of its debentures, as the indenture lacked any terms prohibiting the transaction).

## V.

### THE PLAINTIFF'S CIVIL CONSPIRACY CLAIM IS UNTENABLE AS AGAINST BNY

As a threshold matter, neither New York nor Indiana recognizes a cause of action for

civil conspiracy independent of an underlying claim.  See  Fisk v. Letterman, 424 F. Supp. 2d

670, 677 (S.D.N.Y. 2006) (citation omitted) ("New York law only recognizes an action for civil

conspiracy if it is connected to a separate underlying tort."); Goetzke v. Ferro Corp., 280 F.3d

766, 778 n.9 (7th Cir. 2002) (citing Huntington Mortgage Co. v. DeBrota, 703 N.E.2d 160, 168

(Ind. Ct. App. 1998) ("As a technical matter, Indiana does not recognize a cause of action for

civil conspiracy.").  Plaintiff's civil conspiracy claim is, therefore, untenable against BNY, as

BNY would have had to have participated in the alleged conspiracy prior to Plaintiff's purchase

of the Securities, a time long before BNY had any connection with the Securities.  In any event,

to establish a claim of civil conspiracy, plaintiff must demonstrate the following four elements:

"(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement;

(3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting

damage or injury."  Fisk, 424 F. Supp. 2d at 677 (citation omitted).  The elements are similar

under Indiana law.  See Goetzke, 280 F.3d at 777 (citing Huntington Mortgage Co., 703 N.E.2d at 168 ("'[A] civil conspiracy is defined as a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, *by unlawful means*.'") (emphasis added).  In both jurisdictions, the overt act or acts must be tortious or unlawful acts. Fisk, 424 F. Supp.  2d at 677.  Plaintiff alleges no such overt acts by BNY or fails to specify how any conduct in which the predecessor trustee Bank One is alleged to have been engaged meets this standard.  The claim for civil conspiracy fails then as a matter of law.

## VI.

### NEW YORK'S MARTIN ACT PRECLUDES PLAINTIFF'S COMMON LAW CAUSES OF ACTION FOR BREACH OF FIDUCIARY DUTY

Plaintiff's claim for breach of fiduciary duty is barred by New York's Martin Act (the "Martin Act").   N.Y. GEN. BUS. LAW Art. 23-A § 352 *et seq*.  Federal courts in diverse jurisdictions have held that the Martin Act bars private claims of breach of fiduciary duty arising out of the sale of securities.  See Renovich v. Stewardship Concepts, Inc., No. 84-C-7727 (GMM), 1989 WL 56197, at *5 (N.D. Ill. May 15, 1989) (citations omitted) ("[S]ince 1987 New York courts have held that the Martin Act does not provide a private cause of action for securities fraud . . . Accordingly, summary judgment … is granted on the Martin Act claims); see also Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230 (LMM), 2002 WL 31027550, at *10 (S.D.N.Y. Sept. 10, 2002) (citations omitted) ("Plaintiff's … breach of fiduciary duty claims are precluded by New York's version of the blue sky laws, the Martin Act … and should be dismissed. Courts have deemed claims for … breach of fiduciary duty in the context of sales of securities to come within the purview of the Martin Act.").  Plaintiff's breach of fiduciary duty claim should therefore be dismissed.

<u>C<small>ONCLUSION</small></u>

For all the foregoing reasons, BNY respectfully requests that the Court grant its motion to dismiss the Complaint as against BNY in its entirety and with prejudice.

Dated:  Indianapolis, Indiana
        November 9, 2007

T<small>HE</small> B<small>ANK OF</small> N<small>EW</small> Y<small>ORK</small>

By:  ___/s/ Robert J. Palmer_____

THACHER PROFFITT & WOOD LLP

Richard F. Hans (admitted *pro hac vice*)
    E-mail:  rhans@tpw.com
John P. Doherty (admitted *pro hac vice*)
    E-mail:  jdoherty@tpw.com
Thomas O. O'Connor (admitted *pro hac vice*)
    E-mail:  toconnor@tpw.com

Two World Financial Center
New York, NY  10281
Telephone:  (212) 912-7400
Fax:  (212) 912-7751

MAY OBERFELL LORBER

Robert J. Palmer
    E-mail:  rpalmer@maylorber.com

4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: (574) 243-4100
Fax: (574) 232-9789

*Attorneys for The Bank of New York*

CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007 I electronically filed the foregoing with the Clerk of
the Court using the CM/ECF system which sent notification of such filing to the following:

Andrew Dale Ledbetter, Esq.
Ledbetter & Associates PA
350 E. Las Olas Blvd., Suite 1220
Fort Lauderdale, FL 33301
954-766-7875
Fax: 954-766-7800
Email: dledbetter@dlsecuritieslaw.com

George Robert DeLoach, Jr., Esq.
Ledbetter & Associates PA
350 E. Las Olas Blvd., Suite 1220
Fort Lauderdale, FL 33301
954-766-8730
Fax: 954-766-7800
Email: gdeloach@dlsecuritieslaw.com

Mark E. Maddox, Esq.
Maddox Hargett & Caruso PC
10100 Lantern Road, Suite 150
Fishers, IN 46037
317-598-2040
Fax: 317-598-2050
Email: mmaddox@mhclaw.com

Thomas K. Caldwell, Esq.
Maddox Hargett & Caruso PC
10100 Lantern Road, Suite 150
Fishers, IN 46037
317-598-2040
Fax: 317-598-2050
Email: tkcaldwell@mhclaw.com

Colleen J. O'Loughlin, Esq.
McKee Nelson LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004
917-777-4200
Fax: 917-777-4299
Email: coloughlin@mckeenelson.com

Jeffrey Q. Smith, Esq.
McKee Nelson LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004
917-777-4200
Fax: 917-777-4299
Email: jqsmith@mckeenelson.com

Scott E. Eckas, Esq.
McKee Nelson LLP
One Battery Park Plaza, 34th Floor
New York, NY 10004
917-777-4200
Fax: 917-777-4299
Email: seckas@mckeenelson.com

Lee B. McTurnan
McTurnan & Turner
2400 Market Tower
10 West Market Street
Indianapolis, IN 46204
317-464-8181
Fax: 317-464-8131
Email: lmcturnan@mtlitigation.com

Shannon D. Landreth
McTurnan & Turner
2400 Market Tower
10 West Market Street
Indianapolis, IN 46204
317-464-8181
Fax: 317-464-8131
Email: slandreth@mtlitigation.com

I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

Simon A. Fleischmann, Esq.
Lord Bissell & Brook LLP
111 S Wacker Drive
Chicago, IL 60606-4410
312-443-0462
Fax: 312-896-6471

Thomas J. Cunningham, Esq.
Lord Bissell & Brook LLP
111 S Wacker Drive
Chicago, IL 60606-4410
312-443-1731
Fax: 312-896-6731

_____/s/ Robert J. Palmer_____