UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| FIRST BANK RICHMOND, N.A., | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1262-LJM-TAB |
| | ) | |
| CREDIT SUISSE FIRST BOSTON | ) | |
| CORPORATION, a/k/a Credit Suisse | ) | |
| Securities (USA) LLC, | ) | |
| CREDIT SUISSE FIRST BOSTON | ) | |
| MORTGAGE SECURITIES CORP., | ) | |
| DLJ MORTGAGE CAPITAL, INC., | ) | |
| TRIAD GUARANTY INSURANCE | ) | |
| CORPORATION, | ) | |
| SELECT PORTFOLIO SERVICING, INC., and | ) | |
| BANK OF NEW YORK, | ) | |
| Defendants. | ) | |

## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

This matter is before the Court on three separate Motions to Dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), filed by defendants, The Bank

of New York ("BNY"), Triad Guaranty Insurance Corporation ("Triad"), Credit Suisse First Boston

Corporation, a/k/a Credit Suisse Securities (USA) LLC ("Credit Suisse"), Credit Suisse First Boston

Mortgage Securities Corporation ("Credit Suisse Mortgage"), DLJ Mortgage Capital, Inc. ("DLJ"),

and Select Portfolio Servicing ("SPS") (the last four defendants collectively, the "Credit Suisse

Defendants") (all defendants collectively, the "Defendants").  Plaintiff, First Bank of Richmond

("Plaintiff"), initiated this action against Defendants alleging claims under tort, contract, and Indiana

Code Section § 23-2-1-12, the Indiana Securities Act.  The Court has considered the parties'

arguments and, for the foregoing reasons, **GRANTS in part and DENIES in part** Defendants'
Motions to Dismiss.

## I.   BACKGROUND

For the purposes of these motions, the Court accepts as true the well-pleaded factual
allegations from the Complaint.[1]  On or about November 29, 2001, Credit Suisse Mortgage, an
affiliate of Credit Suisse, issued a series of Mortgage-Backed Pass-Through Certificates (the
"Certificates"), titled Series 2001-28.  Compl. ¶¶ 8, 14.  The Certificates were collateralized by pools
of residential real estate mortgages located in Indiana and elsewhere.  *Id.* at ¶ 14.  Specifically, the
mortgage pool consisted of one group of 3,055 fixed-rate mortgage loans with an aggregate principal
balance of $247,399,776.00, and a second group of 393 adjustable rate mortgage loans with an
aggregate principal balance of $57, 521, 925.00.  *Id.* ¶ 14 n.1.  DLJ purchased the  mortgage loans
and later sold the loans to Credit Suisse Mortgage.  *Id.* ¶ 14.  On or about October 23, 2001, Credit
Suisse Mortgage created a trust to hold the Certificate for the benefit of certificate holders (the
"Trust").  Compl. ¶ 18.  Bank One acted as the original trustee.  *Id.*  Credit Suisse Mortgage received
the Certificates in return for the conveyance of the mortgage loans to the Trust.  Ex. C, § 2.06.

---

[1] Plaintiff attached to its Complaint an October 23, 2001, Prospectus (the "Prospectus"); a
November 29, 2001, Prospectus Supplemental (the "Prospectus Supplemental"); a Pooling and
Servicing Agreement (the "PSA"); a December 26, 2001, Statement to Certificateholders (the
"Trustee Statement"); and a mortgage guaranty insurance policy (the "Policy"); labeled Exhibits
A, B, C, D, and E, respectively.  Accordingly, the Court may consider these documents on these
Motions to Dismiss.  Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *Chi. Dist. Council of Carpenters Welf. Fund v.
Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

Credit Suisse, acting as underwriter, purchased the Certificates from Credit Suisse Mortgage on or after November 30, 2001, in order to sell Certificates to purchasers on the open market. *Id.* ¶ 15.

The Certificates are divided into multiple classes, called "tranches." *Id.* Ex. B, S-6. Each tranche has a unique position in the Trust's hierarchy of payments. *Id.* Ex. B, S-6-8, S-39-67. In general, tranches entitled to receive distributions first bear less risk than tranches lower in the hierarchy. *Id.* Ex. B, S-6. The transaction at issue contained eleven tranches of offered Certificates. *Id.*

In order to facilitate the sale of the Certificates, Credit Suisse published the Prospectus on or about October 23, 2001, and the Prospectus Supplement on or about November 29, 2001. *Id.* ¶ 16; Exs. A & B. The Prospectus and the Prospectus Supplement were prepared and issued with the input, advice, and consent of DLJ, Credit Suisse, Credit Suisse Mortgage, Bank One[2] as trustee, and Vesta Servicing, L.P. ("Vesta").[3] *Id.* ¶ 17.

Credit Suisse Mortgage acquired a loan level mortgage guaranty insurance policy (the "Policy") issued by Triad for the benefit of the Trust. *Id.* ¶ 18. It acquired the Policy to offer additional security to certificate holders in the Trust, and to induce Moody's Rating Service ("Moody's")[4] to provide a higher credit rating for the Certificates. *Id.* ¶ 18. This, in turn, made the

---

[2] Bank One is a predecessor in interest to BNY. Compl. ¶¶ 12, 17.

[3] Vesta Servicing, L.P. was predecessor in interest to SPS, another Credit Suisse affiliate, and servicer of the mortgage loans that served as collateral for the Certificates. Compl. ¶¶ 11, 17.

[4] Moody's is commonly relied on in the industry by investors to make a decision to purchase or not purchase particular securities, and for ratings on various securities, including the Certificates at issue in this case. Compl. ¶ 30.

Certificates more attractive to potential purchasers. *Id.* Finally, on November 1, 2001, Credit Suisse Mortgage entered into the "PSA" with Vesta, DLJ, and Bank One. *Id.*

The Prospectus Supplement provides, among other things, that "[n]o mortgage loan [that makes up the pool collateralizing the Certificates] will be delinquent more than [thirty] days as of the cut-off date[,]" defined as November 1, 2001. Compl. ¶ 19; Ex. B, S-5, S-19. The Prospectus Supplement also required the seller of a mortgage loan, upon breach of any representation or warranty relating to that loan that materially and adversely affects the interest of the certificate holders, to: (1) cure the breach; (2) repurchase the mortgage loan; or (3) substitute a replacement mortgage loan for that mortgage loan within two years of the closing date. *Id.* ¶ 19 ; Ex. B, S-17 & S-18. Furthermore, the Prospectus Supplement stated that credit support would be provided by over-collateralization; that fraudulent mortgage loans would be put back to DLJ; that the mortgage loans would be properly serviced; and that insurance claims would be properly filed and pursued. *Id.* ¶ 19; Ex. B, at S-20, S-34.

The Trustee's duties include the obligation to make available certain information that the Trustee receives concerning the Certificates and the underlying mortgage loans to certificateholders on a monthly basis. *Id.* Exs. B, S-55 & C, § 4.04(a). In the past, the Trustee utilized Statements to Certificateholders, such as the Trustee Statement attached to the Complaint. *See Id.* Ex. D. According to the Prospectus Supplement, the Trustee Statement is the "primary source of information available to investors concerning the offered certificates." *Id.* Ex. B, S-72. It is available to anyone on the Trustee's website. *Id.* Ex. B, S-55. Moreover, the Supplemental Prospectus states that "[t]here can be no assurance that any additional information regarding the offered certificates will be available through any other source." *Id.* Ex. B., S-72.

4

According to the Trustee Statement, at least 132 of the loans underlying the Certificates were more than thirty days delinquent as of the cut-off date. *Id.* ¶ 20; Ex. D. Bank One, Credit Suisse, Credit Suisse Mortgage and SPS never issued an amendment or correction to the Prospectus Supplement. *Id.* ¶ 21. Additionally, the Prospectus Supplement specifically provides that "[y]ou should rely on the information contained in this document or to which we have referred you in this prospectus supplement. We have not authorized anyone to provide you with information that is different." *Id.* ¶ 22; Ex. B, S-2.

In the PSA, DLJ represented and warranted to Credit Suisse Mortgage and Bank One, that, among other things: all payments due prior to November 1, 2001 for a DLJ mortgage loan had been made as of the Closing Date, November 30, 2001; the mortgage loans were not delinquent in payment more than thirty days; and there were no material defaults under the terms of the mortgage loans. *Id.* ¶ 23; Ex. C, Schedule III(A)(iii)(p.III-1). DLJ further represented that "No fraud, error, omission, misrepresentation, negligence, or similar occurrence with respect to a [DLJ mortgage loan] has taken place on the part of [DLJ] or the Mortgagor, or to the best of [DLJ]'s knowledge, on the part of any party involved in the origination of the Mortgage Loan." *Id.* ¶ 23, Ex. C, Schedule III(A)(X)(p. III-3). Lastly, DLJ warranted that upon discovery of any breach of a representation or warranty that materially and adversely affects the interest of the certificateholders, it would cure the breach. *Id.* ¶ 23; Ex. C, § 2.03(c) (p. 47). Alternatively, if the breach occurred prior to the second anniversary of the Closing Date, DLJ would have the option of supplying a substitute mortgage loan for the loan that caused the breach or to repurchase the subject mortgage loan. *Id.*

In January 2003, Plaintiff purchased tranches of the Certificates, specifically those identified as Security I-B-1 (the "I-B-1 Certificates"). *Id.* ¶ 28. The I-B-1 Certificates were subordinated to

5

approximately 96% of all the Certificates offered publicly for sale in the initial distribution. *Id.* Ex. B, S-1, S-6, S-67. As such, they were among the most risky of the Certificates offered. *Id.* The Prospectus and the Prospectus Supplement identify the risk factors attendant to investing in these types of Certificates, including, that returns will depend on how many of the mortgage loans prepay, how many of the mortgage loans default, and the recovery rate on such defaults. *Id.* Ex. B, S-10-16. In exchange for the increased risk, Plaintiff was compensated with a higher rate of return, a fixed rate of 7.75%, over two-and-one-half times the rate of return for the least risky Certificates, a fixed rate of 2.76%. *Id.* Ex. B, S-6.

At that time, neither Credit Suisse, Credit Suisse Mortgage, SPS, nor Bank One had (1) made any amendment or correction to the Prospectus Supplement or any of the Statements to Certificateholders; (2) informed Plaintiff that neither SPS nor Bank One had sought to enforce their rights under the PSA against DLJ; (3) informed Plaintiff that Triad had declined to cover many of the mortgage loans in the pool on the basis that the loans had been procured through the use of fraud; (4) informed Plaintiff that neither SPS nor Bank One had sought to enforce their legal remedies against Triad for denying insurance coverage for delinquent mortgage loans. *Id.* ¶ 29.

In addition to not informing Moody's of the same facts of which the Defendants had failed to inform Plaintiff, Defendants also failed to inform Moody's of numerous loan delinquencies and defaults in the pool. *Id.* ¶ 30. On January 30, 2003, the date Plaintiff purchased the Certificate Tranches, the Moody's rating was Aa2, the same as it was at the time of original distribution. *Id.* ¶ 31. The Moody's rating given to the various Certificate Tranches are in the sole judgment of Moody's, not the Credit Suisse Defendants. *Id.* Ex. A, 102; Ex. B, S-9, S72-73. The I-B-1 Certificates' Moody's rating suffered a series of downgrades beginning in January 2005. *Id.* ¶ 32.

Had a downgrade been made prior Plaintiff's purchase of the Certificate Tranches, Plaintiff would not have made the purchase. *Id.*

If Credit Suisse, Credit Suisse Mortgage, Bank One, or SPS published information to reflect the problems with the mortgage loans forming the corpus of the Trust, Plaintiff would not have purchased the Certificate Tranches. *Id.* ¶ 33. Plaintiff relied upon Defendants' representations regarding the collateral and credit enhancements, Moody's ratings, and Credit Suisse's reputation and marketing efforts regarding the Certificates to decide to purchase the I-B-1 Certificates. *Id.* ¶ 35.

## II.  STANDARD

When ruling on these Motions to Dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the Complaint and the inferences reasonable drawn from those allegations, and views them in the light most favorable to Plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d. 614, 618 (7th Cir. 2007). "A plaintiff's complaint need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief', sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing Fed. R. Civ. P. 8(a)(2)); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)). The Complaint's "allegations must plausibly suggest that [Plaintiff] has a right to relief, raising that possibility above the 'speculative level.'" *EEOC v. Concentra Health Care Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atlantic*, 127 S. Ct. 1965, 1973 n. 14)).

# III.  DISCUSSION[5]

## A.  CREDIT SUISSE DEFENDANTS' MOTION TO DISMISS

Plaintiff's claims against the Credit Suisse Defendants fall into three categories: (1) claims under Indiana and New York tort law; (2) claims under the PSA; and (3) a claim under Section 23-2-1-19 of the Indiana Securities Act.  The Court addresses these claims in turn.

### 1.  Plaintiff's Claims under Indiana and New York Tort Law

#### a. Counts I & V

In Counts I and V, Plaintiff asserts claims of negligent misrepresentation against Credit Suisse and Credit Suisse Mortgage.  Compl. ¶¶ 37-46, 75-83.  The alleged misrepresentations underlying these claims include: (1) the statement in the Prospectus Supplement that "[n]o mortgage loan will be delinquent more than [thirty] days as of the cut-off date," Compl. ¶ 20; Ex. B, S-19; and (2) the Credit Suisse Defendants' failure to update the Prospectus, Prospectus Supplement, and the PSA, Compl. ¶¶ 29-30, 38, & 51.

In general, "Indiana has not recognized that a duty exists to support the tort [of negligent misrepresentation] outside the limited context of an employment relationship." *Thomas*, 848 N.E.2d at 761.  Moreover, "a professional owes no duty to one with whom he has no contractual relationship unless the professional has actual knowledge that such third person will rely on his professional opinion." *Id.*  Credit Suisse and Credit Suisse Mortgage argue that Plaintiff's claims for negligent

---

[5] Both parties cite to both Indiana and New York law in support of their respective position.  Because neither has identified an outcome determinative conflict between Indiana and New York law, the Court need not engage in a conflict of laws analysis.  *See Int'l Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 n.4 (7th Cir. 1985).

misrepresentation must fail because Plaintiff and the Credit Suisse Defendants did not have an employment relationship.  Conversely, Plaintiff argues that the Credit Suisse Defendants were professionals that had actual knowledge that Plaintiff would rely on their professional opinion.

The Court finds that the Complaint contains sufficient facts to assert a claim of negligent misrepresentation against Credit Suisse and Credit Suisse Mortgage under Indiana law.  Plaintiff asserts that the statement "[n]o mortgage loan will be delinquent more than [thirty] days as of the cut-off date" was false, and that Credit Suisse and Credit Suisse Mortgage, among others, "knew . . . th[at] representation was false when it was made."  Compl. ¶ 20.  Further, the Prospectus Supplement instructs that potential purchasers should rely on the information within that document, and that the Credit Suisse Defendants had not authorized any other entity to provide purchasers with different information. *Id.* ¶ 22; Ex. B, at S-2.  Although the Credit Suisse Defendants point out that the Prospectus Supplemental instructs purchasers that information regarding the Certificates is available at the Trustee's website, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff.  *See Killingsworth*, 507 F.3d at 61.  In doing so, the Court finds that the Complaint asserts that Credit Suisse and Credit Suisse Mortgage had actual knowledge that Plaintiff would rely on their professional opinion.  *See Thomas*, 848 N.E.2d at 761.  Therefore, Plaintiff has stated a claim for negligent misrepresentation under Indiana law.

Under New York law, a claim for negligent misrepresentation requires the plaintiff to demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 864 N.E. 2d 585, 587 (N.Y. 2007).

Under the first prong, Credit Suisse and Credit Suisse Mortgage argue that the Complaint fails to state a claim under New York law because Plaintiff did not plead that Plaintiff had any contact or relationship with Credit Suisse or Credit Suisse Mortgage or that Plaintiff purchased the I-B-1 Certificates from Credit Suisse or Credit Suisse Mortgage.  Cred. Suisse Defs.' Br. at 13.  However, the Complaint alleges that Credit Suisse and Credit Suisse Mortgage intentionally released the information in the Prospectus and Prospectus Supplement for the benefit and guidance of a limited group of potential purchase of which Plaintiff is a part, and to influence the same group to purchase the Certificates.  Compl.  ¶¶ 39, 41-42, 48-49, 78-79.  Moreover, Credit Suisse and Credit Suisse Mortgage instructed Plaintiff to rely on the information in the Prospectus Supplement and that the Credit Suisse Defendants had not authorized any other entity to provide purchasers with different information.  *Id.* ¶ 22; Ex. B, at S.  As before, although it is true that the Prospectus Supplement instructed purchasers that a website contained more information, the Court must view the allegations in the light most favorable to Plaintiff.  *See Killingsworth*, 507 F.3d at 61.  The Court finds that Plaintiff has sufficiently plead "the existence of a special or privity-like relationship imposing a duty on [Credit Suisse and Credit Suisse Mortgage] to impart correct information to [Plaintiff]."  *J.A.O. Acquisition Corp.*, 864 N.E. 2d at 587.

Under the second prong, the Complaint alleges that Credit Suisse and Credit Suisse made the false statement that "[n]o mortgage loan will be delinquent more than [thirty] days as of the cut-off date," Compl. ¶ 20; Ex. B, S-19.  Therefore, the Complaints allegations, taken as true, satisfy the second prong.  *See J.A.O. Acquisition Corp.,* 864 N.E. 2d at 587; *see also Killingsworth*, 507 F.3d. at 618.

Under the third prong, Credit Suisse and Credit Suisse Mortgage argue that Plaintiff has not pled actual reliance on the Prospectus and Prospectus Supplement because "[t]he Complaint is devoid of any allegations that [Plaintiff] received and reviewed the Prospectus, the Supplemental Prospectus or any other information concerning the Subordinated Certificates received from Credit Suisse or Credit Suisse Mortgage." Cred. Suisse Defs.' Br. at 13.  Apparently, the Credit Suisse Defendants would require Plaintiff to specifically plead that it read and reviewed the documents at issue.

However, Plaintiff's Complaint need only contain allegations from which the Court can reasonably infer that Plaintiff actually relied on the Prospectus and Prospectus Supplement.  *See Killingsworth*, 507 F.3d. at 618.  The Complaint alleges that Plaintiff would not have purchased the I-B-1 Certificates had Credit Suisse published accurate information in the Prospectus Supplement. Compl. ¶ 40.   Moreover, the Complaint alleges that Plaintiff relied on Credit Suisse's misrepresentations contained in the Prospectus and Prospectus Supplement when it decided to purchase the I-B-1 Certificates.  In order to rely on such information in those documents, it is reasonable to infer that Plaintiff read and reviewed those documents.  Therefore, although Plaintiff did not specifically plead that it actually read and reviewed the Prospectus and Prospectus Supplement,  the Court finds that the Complaint, taken as true and drawing reasonable inferences therefrom,  complies with Rule 8(a).  *See Killingsworth*, 507 F.3d. at 618.

Credit Suisse and Credit Suisse Mortgage next argue that, even assuming Plaintiff relied on those documents, Plaintiff's reliance was unreasonable.  Noting that Plaintiff purchased the I-B-1 Certificates in 2003 and the Credit Suisse Defendants issued the Prospectus Supplemental in November 2001, Credit Suisse and Credit Suisse Mortgage contend that "[i]t is unreasonable as a

matter of law for a sophisticated party to rely on such stale information." Cred. Suisse Defs.' Br. at 14. They also note that Plaintiff had access to multiple Trustee Statements to Certificateholders, including the Trustee Statement attached to the Complaint, that contained up-to-date information on the mortgage loans. *Id.* (citing Compl. ¶ 20, Ex. D).

However, Credit Suisse and Credit Suisse Mortgage specifically instructed Plaintiff to rely on the information in the Prospectus Supplement. Compl. ¶ 22; Ex. B, S-2. They cannot now argue that Plaintiff's reliance on the information contained in that document is unreasonable when they instructed Plaintiff to rely on that exact information. Although Plaintiff may have had access to up-to-date information regarding the mortgage loans, given that the Prospectus Supplement instructed Plaintiff to rely on the information contained in that document, and that the Court must view the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has stated a claim for negligent misrepresentation under New York law upon which relief can be granted. *See J.A.O. Acquisition Corp.,* 864 N.E. 2d at 587; *see also Killingsworth*, 507 F.3d. at 618.

Ultimately, Plaintiff's Complaint contains allegations that, if true, demonstrate Plaintiff's entitlement to relief for negligent misrepresentation under Indiana and New York law. *See Thomas*, 848 N.E.2d at 761; *see also J.A.O. Acquisition Corp.*, 864 N.E. 2d at 587. Accordingly, Credit Suisse's Motion to Dismiss Count I and Credit Suisse Mortgage's Motion to Dismiss Count V are **DENIED**.

### b.  Counts II & VI

In Counts II and VI, Plaintiff asserts claims for false information negligently supplied for the guidance of others against Credit Suisse and Credit Suisse Mortgage, respectfully.  Compl. ¶¶ 47-56, 84-92.  Neither Indiana nor New York provide a claim for false information negligently supplied for the guidance of others.  The Restatement of Torts section setting forth the elements of a negligent misrepresentation claim is entitled "Information Negligently Supplied for the Guidance of Others."  Restatement (Second) of Torts § 552 (1977) ("Section 552).  Therefore, the claim for information negligently supplied for the guidance of others is nothing more than the Restatement's version of the negligent misrepresentation cause of action.  To the extent Indiana recognizes the tort of negligent misrepresentation, it is based on Section 552.  *See Thomas v. Lewis Eng'g, Inc.*, 848 N.E.2d 758, 759-62 (Ind. Ct. App. 2006).  Therefore, Indiana law does not provide a claim for false information negligently supplied for the guidance of others.  Moreover, New York Law does not follow the Restatement for negligent misrepresentation claims.  *See Williams & Sons Erectors, Inc. v. S.C. Steel Corp.*, 983 F.2d 1176, 1181 (2d Cir.1993).  Accordingly, New York does not recognize a claim for false information negligently supplied for the guidance of other.  *See id.*  As such, Credit Suisse's Motion to Dismiss Count II and Credit Suisse Mortgage's Motion to Dismiss Count VI are **GRANTED**.  Counts II and VI are hereby **DISMISSED.**

### c.  Counts III and VII

Next, Plaintiff asserts claims for fraud against Credit Suisse and Credit Suisse Mortgage in Counts III and VII, respectively.  Under Indiana law, the elements of fraud include a "material representation of past or existing facts, which representations are false, made with knowledge or

reckless ignorance of this falsity, which cause a reliance upon these representations to the detriment of the person so relying." *Vaughn v. Gen. Foods Corp.*, 797 F.2d 1403, 1410 (7th Cir. 1986) (quoting *Whiteco Props., Inc. v. Thielbar*, 467 N.E.2d 433, 436 (Ind. Ct. App. 1984)).   Under New York law, a plaintiff must demonstrate: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and an intent to defraud; coupled with (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.  *See Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir. 2006).  To satisfy the pleading requirements of Rule 9(b), to plead fraud, a plaintiff must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

Credit Suisse and Credit Suisse Mortgage first argue that claims for actual fraud under Indiana law can only stem from actual statements of a past or existing fact, not omissions.  Cred. Suisse Defs.' Br. at 16 (citing *Banco del Atlantico, S.A. v. Stauder*, No. 03-cv-1342, 2005 WL 1925830, at *5 (S.D. Ind.  Aug. 11, 2005); *Mudd v. Ford Motor Co.*, No. 04-cv-465, 2005 WL 2369833, at *3-4 (N.D. Ind. Sept. 27, 2005)).  Therefore, they argue that the portions of Counts III and VII based upon omission should be dismissed.  *Id.*  However, the cases cited by Credit Suisse and Credit Suisse Mortgage do not address "omissions," but rather hold that a plaintiff cannot base its claim for fraud upon a promise to do a thing in the future or an expression of opinion.  *Stauder*, 2005 WL 1925830, at *5; Mudd, 2005 WL 2369833, at *3-4.  As Plaintiff points out, "[o]missions are actionable as implied representations when the circumstances are such that a failure to

14

communicate a fact induces a belief in its opposite." *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir. 1993). Here, the Complaint alleges that Credit Suisse and Credit Suisse Mortgage failed to update the information in the Prospectus and Prospectus Supplemental, and that such failure induced Plaintiff to purchase the I-B-1 Certificates. Compl. ¶¶ 29, 35. Therefore, the Court finds that Plaintiff can predicate its fraud claims upon Credit Suisse and Credit Suisse Mortgage's omission.

Next, Credit Suisse and Credit Suisse Mortgage argue that Plaintiff's Complaint does not contain factual allegations which, if true, would demonstrate the representation was made with the requisite intent. They argue that "the most [Plaintiff] alleges is that the complained-of actions were "willful, oppressive and malicious." Cred. Suisse Defs.' Br. at 17. However, the Complaint alleges that Credit Suisse Mortgage at one point owned the mortgages at issue; that the Credit Suisse Defendants' made the statement "[n]o mortgage loan [that makes up the pool collateralizing the Certificates] will be delinquent more than [thirty] days as of the cut-off date[;]" that they made the statement in a November 29, 2001, Prospectus Supplement; that they released the Prospectus Supplemental to all potential purchases; that they knew the statement was false, and that they made the statement to induce potential purchasers to purchase the Certificates. Compl. ¶¶ 14, 16, 17, 20, 59, 61, 95, 97. As such, the Complaint not only states "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to plaintiff[,]" *Uni*Quality, Inc.*, 974 F.2d at 923 (quoting *Bankers Trust Co.*, 959 F.2d at 683), but also that Credit Suisse and Credit Suisse Mortgage intentionally misrepresented a material fact.

Finally, contrary to what Credit Suisse and Credit Suisse Mortgage contend, Plaintiff's reliance on the misrepresentation, taking the allegations in the complaint as true and viewed in the light most favorable to Plaintiff, was reasonable for the same reasons as discussed above with respect to Plaintiff's claims for negligent misrepresentation. *See Killingsworth*, 507 F.3d. at 618. The Court concludes that the Complaint contains sufficient allegations that, if true, demonstrate Plaintiff's entitlement to relief for fraud under Indiana and New York law. Therefore, Credit Suisse's Motion to Dismiss Count III and Credit Suisse Mortgage's Motion to Dismiss Count VII are **DENIED.**

### d.  Counts IV and X

In Counts IV and X, Plaintiff asserts claims for breach of fiduciary duty against Credit Suisse and SPS, respectively. In order to properly state a claim for breach of fiduciary duty, Plaintiff must plead facts to demonstrate the existence of a fiduciary relationship of trust and confidence. *See Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*, 276 F.3d 123, 130 (2d Cir. 2002); *Bruno v. Wells Fargo Bank, N.A.*, 850 N.E.2d 940, 946-47 (Ind. Ct. App. 2006). "The fact that one party trusts the other is insufficient." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). "The dominant party must accept the responsibility, accept the trust of the other party before a court can find a fiduciary relationship." *Id.*

Plaintiff did not plead that Plaintiff and the Credit Suisse or SPS engaged in even arms-length negotiation. Indeed, Plaintiff did not even plead it purchased the Certificate directly from any of the Defendants. Instead, Plaintiff relies on its "dependence" on the information contained in the Prospectus and Prospectus Supplement and a general instruction by the Credit Suisse Defendants to rely on those publications to show Credit Suisse's or SPS' acceptance of responsibility. Pl.'s Resp.

to Cred. Suisse at 14.  However, mere "dependence" is insufficient unless the party upon which the duty is to be imposed accepts the responsibility of that duty.  *See Pommier*, 967 F.2d at 1119. Plaintiff has not pled that the Credit Suisse Defendants accepted such responsibility.  Therefore, Credit Suisse Defendants' Motion to Dismiss as to Counts IV and X is **GRANTED.**  Counts IV and X are hereby **DISMISSED.**

### e. Count XVII

In Count XVII, Plaintiff asserts a claim for conspiracy against the Credit Suisse Defendants and BNY.  Compl. ¶¶ 162-166.  In Indiana, "a civil conspiracy is defined as 'a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not itself unlawful, by unlawful means.'"  *United Consumers Club, Inc. v. Bledso*, 441 F. Supp. 2d 967, 975 (N.D. Ind. 2006) (quoting *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626, 628 (1966)).  "Allegations of a civil conspiracy are just another way of asserting concerted action in the commission of a tort."  *Id.* (quoting *Boyle v. Anderson Fire Fighters Ass'n*, 497 N.E.2d 1073, 1079)).  To establish a claim for civil conspiracy under New York law, a plaintiff must demonstrate an underlying tort, plus the following four elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (citations omitted).

The Credit Suisse Defendants and BNY argue that the Court should dismiss Count XVII because Plaintiff has failed to plead facts that demonstrate an agreement and overt act.  The Complaint alleges that "[a]ll of the defendants, acting in concert with one another, conspired and

agreed to (i) develop and implement the foregoing scheme to defraud; and (ii) make the material misrepresentations set forth above; and (iii) breach the Pooling and Servicing Agreement." Compl. ¶ 163.  It also states that "Defendants each made overt acts in furtherance of the conspiracy as specifically discussed in greater detail above." *Id.* ¶ 164.  Although the Complaint does allege sufficient facts that constitute an overt act, merely alleging that the Defendants' "agreed" is not specific enough to support a claim for civil conspiracy under Indiana and New York law.  *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007); *see also Brownstone Inv. Group, LLC v. Levey*, 468 F. Supp.2d 654, 661 (S.D.N.Y. 2007) (citations omitted) ("[T]o survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy.  Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy.")).  Accordingly, the Credit Suisse Defendants' and BNY's Motions to Dismiss Count XVII are **GRANTED**.  Count XVII is hereby **DISMISSED**.

## 2. **Claims under the PSA**[6]

Plaintiff brought multiple breach of contract claims under the PSA against DLJ (Count IX) and SPS (Counts XI, XII, and XIII).  Initially, the Credit Suisse Defendants argue that Plaintiff's claims under the PSA against DLJ and SPS should be dismissed because Plaintiff failed to make a demand on the Trustee to bring suit.  The Court addresses this argument first.

---

[6] Section 11.03 of the PSA specifically provides that it shall be construed under New York law.  Both Indiana and New York enforce such clauses.  *See St. Paul Travelers Co. v. Corn Island Shipyard, Inc.*, 495 F.3d 376, 383 (7th Cir. 2007); *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 n.7 (2d Cir. 2005).  Therefore, the Court applies New York law to Richmond's breach of contract claims.

### a.  Plaintiff's Alleged Failure to Make a Demand

First, the Credit Suisse Defendants argue that all of Plaintiff's contract claims against DLJ

and SPS should be dismissed because Plaintiff failed to comply with Rule 23.1 of the Federal Rules

of Civil Procedure ("Rule 23.1").  Credit Suisse Def.'s Br. at 21.  Rule 23.1 states:

(a) Prerequisites.

This rule applies when one or more shareholders or members of a corporation or an
unincorporated association bring a derivative action to enforce a right that the
corporation or association may properly assert but has failed to enforce. The
derivative action may not be maintained if it appears that the plaintiff does not fairly
and adequately represent the interests of shareholders or members who are similarly
situated in enforcing the right of the corporation or association.

(b) Pleading Requirements.

The complaint must be verified and must:

(1) allege that the plaintiff was a shareholder or member at the time of the
transaction complained of, or that the plaintiff's share or membership later
devolved on it by operation of law;

(2) allege that the action is not a collusive one to confer jurisdiction that the
court would otherwise lack; and

(3) state with particularity:

(A) any effort by the plaintiff to obtain the desired action from the
directors or comparable authority and, if necessary, from the
shareholders or members; and

(B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(a)-(b).  Specifically, the Credit Suisse Defendants argue that Plaintiff should be

required to pursue this action derivatively by making a demand on the Trust because Plaintiff's

contract claims assert breaches of obligations owed to the Trust as a whole, not to Plaintiff

specifically.  Therefore, any injury sustained by Plaintiff is indirect and based only on Plaintiff's ownership of interests in the Trust.

Plaintiff argues that pursuing a derivative action would have been futile because the Trustee would have had to sue itself and, therefore, it was not required to make a demand.  Furthermore, Plaintiff asserts that the Complaint alleges that SPS, DLJ, and Credit Suisse Mortgage are all affiliates of Credit Suisse, and because of the interrelation between those companies, "any demand upon the trustee would have been futile because the trustee would have been suing one of its affiliates."  Pl.'s Resp. to Cred. Suisse Defs. at 18.

The Court notes that Rule 23.1 does not require a plaintiff to make a demand nor does it govern what excuses are acceptable for failing to make a demand.  *See Boland v. Engle*, 113 F.3d 706, 710 (7th Cir. 1997).  Rather, those issues are governed by state substantive law.  *Id.*  Here, the relevant documents are governed by New York law.  Under New York law, Plaintiff need not make a demand where "it [wa]s futile to make such a demand."  *Velez v. Feinstein*, 451 N.Y.S.2d 110, 115-16 (N.Y. App. Div. 1982).

The Complaint alleges in multiple places that the Trustee was involved in the conduct underlying Plaintiff's claims.  For example, it alleges that the Trustee provided input and advice during the preparation of the Prospectus and Prospectus Supplement, and that the Trustee consented to issuance of those documents.  Compl. ¶ 17.  Moreover, the Complaint alleges that the Trustee knew that the statement "[n]o mortgage loan will be delinquent more than [thirty] days as of the cut-off date" was false.  *Id.* ¶ 20.  The Complaint further alleges that Bank One did not protect the certificateholders by pursuing remedies available under the Pooling and Servicing Agreement to force DLJ to cure the breaches relating to the mortgage loans.  *Id.* ¶ 26.  Finally, the Complaint

alleges that the Trustee has failed to comply with multiple requests from Plaintiff for information regarding the mortgages at issue. *Id.* ¶¶ 159-60.

The Court concludes that, taking the factual allegations as true and viewing those allegations in the light most favorable to Plaintiff, any demand on the Trustee would have been futile. Plaintiff would have essentially been asking the Trustee to bring a suit against DLJ for a breach of DLJ's duty under the PSA. Such breach would have triggered the Trustee's duty to protect the certificateholders, something the Complaint alleges the Trustee simply failed to do. As such, a demand on the Trustee to sue DLJ would have essentially asked the Trustee to bring a suit against itself. Moreover, BNY's refusal to provide information to Plaintiff upon request further supports the Court's conclusion that any demand would be futile. Therefore, the Complaint contains sufficient facts to support a finding that any demand on the Trustee would have been futile, and therefore, Plaintiff was not required to make a demand on the Trustee. Fed. R. Civ. P. 23.1; *see Velez*, 451 N.Y.S.2d at 115-16.

The Credit Suisse Defendants next argue that Plaintiff failed to comply with the "no action" clause in the PSA. Compl. Ex. C, § 11.07. Section 11.07 of the PSA prohibits certificateholders from pursuing a legal remedy under the PSA unless the certificateholder, along with certificateholders holding 25% of the voting rights for the Certificates, provide notice of an Event of Default to the Trustee. *Id.* Additionally, the certificateholders must present a written request for the Trustee to commence an action. *Id.* Plaintiff argues that compliance with the "no action" clause would be futile. The Complaint alleges that the Trustee's actions made it impossible for Plaintiff to comply with the Section 11.07. Compl. ¶¶ 159-160. Specifically, Plaintiff avers that BNY refused to respond to any of Plaintiff's multiple requests for information regarding other

21

certificateholders involved in the transaction. *Id.* Based upon these assertions, the Court concludes that any demand on the Trustee pursuant to Section 11.07 would be futile.

Finally, the Credit Suisse Defendants argue that Section 7.03 of the PSA precludes Plaintiff's claims because it states that neither DLJ nor SPS "shall be under any liability to the Certificateholders for any action taken or for refraining from the taking of any action in good faith pursuant to this Agreement, or for errors in judgment." Compl. Ex. C., § 7.03; Cred. Suisse Defs.' Br. at 27. However, that same section states that DLJ and SPS are not protected against "breach of representations or warranties . . . or from any liability which would otherwise be imposed by reasons of willful misfeasance, bad faith or gross negligence in the performance of duties or by reason of reckless disregard of obligations and duties [under the PSA]." Compl. Ex. C, § 7.03. The Court concludes that Plaintiff's Complaint avers sufficient facts that, if true, demonstrate the Credit Suisse Defendants' bad faith. Compl. ¶¶ 17, 19-22, 25-27, 29-30,109-139. Therefore, Section 7.03 does not bar Plaintiff's claims. *Id.* Ex. C, § 7.03.

### b. Counts IX and XIII

Next, DLJ argues that Plaintiff's claim against DLJ in Count IX fails to satisfy Rule 8(a)(2) for two reasons: (1) the Complaint "alleges no facts regarding the underlying mortgage loans or even the identify of those loans[,]" and, (2) the allegations fail under Section 2.03(c) of the PSA. Cred. Suisse Defs.' Br. at 23. In its first argument, DLJ essentially grafts an improper heightened pleading requirement. Plaintiff "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief', sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo*, 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)). The Complaint avers not only

the contractual provision that DLJ breached, but facts to demonstrate how DLJ breached its duties. Compl. ¶¶ 23, 25-26, 109, 111-12.  This is sufficient under the notice pleading standard of Rule 8(a)(2).  *See Tamayo*, 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)).

However, under Section 2.03(c), the remedy for a breach of that section is limited to specific performance.  Compl. Ex. C, § 2.03(c) ("[T]he obligation under this Agreement of any Person to cure, repurchase or substitute any Mortgage loan as to which a breach has occurred and is continuing shall constitute the sole remedy against such Persons respecting such breach available to Certificateholders[.]").  New York courts enforce contractual limitations on remedies.  *See, e.g.*, *Mom's Bagels of N.Y., Inc. v. Sig Greenbaum, Inc.*, 559 N.Y.S.2d 883, 885 (App. Div. 1990). Plaintiff's Complaint only avers its entitlement to remedial damages, and not specific performance. Accordingly, Plaintiff has not properly pled its entitlement to the relief requested on this claim. Therefore, DLJ's Motion to Dismiss Count IX is **GRANTED.**

Additionally, Count XIII of Plaintiff's Complaint alleges the same breach against SPS as Count IX alleges against DLJ.  SPS and Plaintiff made the same arguments as to Count XIII that DLJ and Plaintiff made regarding Count XI.  *See.* Pl.'s Resp. to Cred. Suisse Defs. at 21; Cred. Suisse Defs.' Br. at 27.  Therefore, because Count XIII only avers Plaintiff's entitlement to remedial damage, and not specific performance as required under the PSA, SPS's Motion to Dismiss Count XIII is **GRANTED.**

### c.  Count XI

Plaintiff asserts that SPS breached its duty to pursue claims for insurance coverage regarding the mortgage loans in the trust and to foreclose on delinquent loans under Sections 3.09 and 3.11 or

23

the SPA, respectively.  Compl. ¶ 125; Ex. C, §§ 3.09, 3.11.  According to the Complaint, SPS failed to enforce its rights and carry out its duties under those sections and, as a result, Plaintiff has been damaged.  Compl. ¶¶ 126-27.

SPS first argues that the Complaint "fail[s] to provide adequate notice and demonstrate a plausible entitlement to relief under Federal rule 8(a)(2)."  Cred. Suisse Defs.' Br. at 24.  According to SPS, Rule 8(a)(2) requires Plaintiff to specifically plead the exact mortgage loans involved.  First, Rule 8(a)(2) does not require such specific pleading.  The Complaint "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief', sufficient to provide the defendant with 'fair notice' of the claim and its basis."  *Tamayo*, 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)).  Under this standard, Plaintiff's Complaint need not specify the exact mortgages.  *Id.*

SPS next argues that Plaintiff's claim fails "to allege a breach under the plain terms of the relevant provisions."  Cred. Suisse Defs.' Br., at 24.  However, the Complaint sets forth the contract provisions that Plaintiff alleges SPS breached, along with factual allegations that, if true, demonstrate SPS did in fact breach its duties under the PSA.  Compl. ¶¶ 27, 125-26.  Plaintiff has satisfied its burden under Rule 8(a).  *See Tamayo*, 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)).  Therefore, SPS's Motion to Dismiss Count XI is **DENIED**.

### d.  Count XII

Count XII alleges that Sections 2.07(b) and 3.07(a) of the PSA obligate SPS to provide loan information to the Trustee and that SPS "fail[ed] to supply the Trustee with complete and accurate information regarding the mortgage loans constituting the pool collateralizing the Certificates."

Compl. ¶¶ 130-31.  Additionally, SPS's breach damaged Plaintiff.  *Id.* at 132.  SPS argues that its

duty to provide such information was triggered only after a formal request.  Cred. Suisse Defs.' Br.,

at 26 (quoting Compl. Ex. C, §§ 2.07(m), 3.07)).  However, as Plaintiff points out, the required

request need not come from Plaintiff.  Rather, under the explicit language of the PSA, the request

could have come from one of SPS's codefendants.  Compl. Ex. C, §§ 2.07(m), 3.07.  Recovery of

such a written request would require discovery between SPS and its codefendants.  Therefore, taking

the Complaints allegations as true, the Court concludes that Plaintiff has sufficiently pled this claim.

The Motion to Dismiss Count XII is **DENIED**.


### 3.  <u>Claim Under Indiana Securities Act</u>

In Count XVIII, Plaintiff alleges that Credit Suisse violated the Indiana Securities Act (the

"Act"), Indiana Code § 23-2-1-12[7].  Compl. ¶¶ 167-77.  Section 23-2-1-12 does not itself create a

private right of action.  Rather, the liability section of the Act is found in Indiana Code § 23-2-1-19.

Ind. Code § 23-2-1-19.  Section 23-2-1-19 "requires either privity between the seller and the

purchaser, or that the person charged have offered the security to the purchaser."  *Kirchoff v. Selby*,

703 N.E.2d 644, 650 (Ind. 1998).  According to the Indiana Supreme Court, the Indiana General

Assembly "did not intend for a remote purchaser of securities to have a cause of action against any

seller within the chain of title, i.e. if A sells to B who resells to C, as a general proposition, C's

recovery is against B, not A."  *Kirchoff*, 703 N.E.2d at 650.  The Complaint fails to allege that

---

[7] On July 1, 2008, the Indiana General Assembly repealed the applicable portions of the
Indiana Securities Act, § 23-2-1, and created § 23-19-1 to replace it.  However, under the new
act, all actions or proceedings pending on June 30, 2008, are governed exclusively by the
predecessor act.  Ind. Code § 23-19-1-1(b).

Plaintiff purchased the I-B-1 Certificates directly from Credit Suisse.  Accordingly, Credit Suisse's Motion to Dismiss Count XVIII is **GRANTED**.  Count XVIII is hereby **DISMISSED.**[8]

### B.  BNY'S MOTION TO DISMISS

Plaintiff asserts four separate claims against BNY in Counts XIV-XVII.  The Court discussed Count XVII, alleging Civil Conspiracy, above.  The Court  discusses the remaining Counts against BNY in turn, but first must address some general arguments furthered by BNY.

BNY first argues that "Plaintiff has failed to allege any basis to impose liability on BNY for the alleged conduct of a twice-removed predecessor trustee."  BNY's Br. at 6.  BNY argues that, because it purchased its interest in the Trust in an asset sale from JP Morgan Chase, who acquired its interest by merging with Bank One, the original Trustee, it is not responsible for the liability of its predecessor.  BNY's Br. at 7-8.

However, as Plaintiff points out, BNY's liability for Bank One's transgression depends upon the nature of the asset sale, namely, whether BNY expressly or impliedly agreed to assume Bank One's liability, whether the asset sale amounted to a consolidation or merger, whether BNY is merely a continuation of Bank One, or whether the asset sale was entered into fraudulently to escape

---

[8] The Court notes the Credit Suisse Defendants' argument that Section 352 of the N.Y. Gen. Bus. Law (McKinney 1996), commonly known as the Martin Act, bars Plaintiff's claims for negligent misrepresentations, breach of fiduciary duty, and conspiracy.  Cred. Suisse Defs.' Br. at 20.  However, viewing the Complaint's allegations in the light most favorable to Plaintiff, the Court concludes that the underlying transactions took place outside of New York, and therefore, the Court cannot decide whether the Martin Act bars these claims.  Compl. ¶¶ 6, 28; *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt.*, LLC, 376 F. Supp. 2d 385, 410 (S.D.N.Y. 2005) (holding that the court could not reach the issue of whether the Martin Act preempted a particular claim because, based on a reading of the complaint, the alleged misconduct was not confined to the state of New York).

liability.  *See Leannais v. Cincinnati, Inc.* 565 F.2d 437, 439 (7th Cir. 1977).  The parties need discovery to determine whether any of these four factors occurred in the asset sale transaction between BNY and JP Morgan Chase (Bank One).  Currently, the Complaint alleges BNY had a duty under the agreement, and that it breached its duty.  Compl. ¶¶ 140-61.  Therefore, at this stage in the litigation, the Complaint's allegations sufficiently state a claim upon which relief can be granted.

Next, similar to the Credit Suisse Defendants, BNY argues that Plaintiff failed to comply with the "no action" clause in Section 11.07 of the PSA.  *Id.* Ex. C, § 11.07, BNY's Br. at 9-10.  However, as discussed before, Plaintiff alleged that BNY made compliance with Section 11.07 impossible by refusing to provide Plaintiff with information.  *Id.*  Therefore, Plaintiff's failure to comply with § 11.07 is excused.

## 1.  **Count XIV**

Count XIV alleges that Section 11.05 of the PSA required BNY to provide certain information to Rating Agencies, and that BNY failed to perform its duties.  Compl. ¶¶ 140-42.  Specifically, Section 11.05 provides that BNY must notify the rating agencies in writing "(a) of any substitution of any Mortgage Loan; (b) any payment or draw on any insurance policy applicable to the Mortgages Loans; (c) of the final payment of any amount owing to a Class of Certificates; (d) any Event of Default under this Agreement; and (e) in the event any Mortgage Loan is repurchased in accordance with this Agreement." Compl. Ex. C, § 11.05.  Although the Complaint alleges that BNY "failed these requirements," it does not allege that any one of these five events occurred to trigger BNY's duty to perform under Section 11.05.  Accordingly, BNY's Motion to Dismiss Count XIV is **GRANTED**.  Count XIV is hereby **DISMISSED.**

27

### 2. **Count XV**

Count XV alleges that Section 4.04 of the PSA requires BNY to provide monthly statements to certificateholders regarding various aspects of the mortgage loans and the Certificates, and that BNY breached its duty under Section 4.04 by failing to provide full and accurate information to Plaintiff.  Compl. ¶¶ 146-46.  BNY's argument stems from the following language in Section 4.04: "The Trustee's responsibility for disbursing the above information to the Certificateholders is limited to the availability, timeliness and accuracy of the information derived from each Servicer[.]"  *Id.* Ex. C, at § 4.04(a).  BNY argues that Section 4.04 explicitly limits the Trustee's duty to acquire and report only that information it receives, and that the Complaint fails to allege that BNY received such information.  BNY's Br. at 12-14.  However, the Complaint alleges that Bank One knew or should have known that the trust contained multiple delinquent loans.  Compl. ¶ 20.  Therefore, taking the allegations in the Complaint as true, Plaintiff has pled a breach of contract claim under the PSA. Therefore, BNY's Motion to Dismiss Count XV is **DENIED.**

### 3. **Count XVI**

In Count XVI, Plaintiff alleges that BNY breached various fiduciary duties imposed upon BNY in its capacity as Trustee.  Compl. ¶¶ 148-61.  Plaintiff argues that Bank One, as predecessor to BNY, "was in a position to prevent financial injury to the certificateholders" and "had an obligation  to [act fairly and honestly toward the certificateholders] because it was placed in a position of trust in which it was required to manage the securities for the benefit of the certificateholders."  Pl.'s Resp. to BNY at 7.  However, as BNY points out, an indenture trustee generally owes only a duty to perform its ministerial duties with due care, but does not owe a

fiduciary duty to certificateholders.  *See, e.g.*, *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, No. 114, 2008 WL 2510628 (N.Y. Ct. App. June 25, 2008).  Plaintiff offers no evidence, contractual or otherwise, that elevated BNY's responsibilities toward the certificateholders to the level of fiduciary duties and, therefore, BNY's Motion to Dismiss Count XVI is **GRANTED**.  Count XVI is hereby **DISMISSED**.

### C.  TRIAD'S MOTION TO DISMISS

Count VIII  asserts a breach of contract claim against Triad under the Policy.  Compl. ¶ 102-08; Ex. E.  Plaintiff alleges that Triad breached its contract of insurance when it "declined to cover many of the mortgage loans in the pool on the basis, amongst other things, that the loans had been procured through the use of fraud."  Compl. ¶¶ 29, 107.  The Policy identifies "Bank One, N.A.[,] as Trustee for CSFB Mortgage Backed Pass-Through Certificates Series 2001-28," and not Plaintiff, as the insured.  *Id.* Ex. E, at 1.  Plaintiff acknowledges that it is not a party to the contract, but argues that it is entitled to relief under the Policy because it is a third-party beneficiary of it. *Id.* ¶ 105; Pl.'s Resp. to Triad at 3-4.  Both parties cite to Indiana law for purposes of Triad's Motion to Dismiss, therefore, the Court will do the same.  *See Mass. Bay Ins. Co. v. Vic Loenig Leasing, Inc.*, 136 F.3d 1116, 1120 (7th Cir. 1998).

Under Indiana law, Plaintiff may enforce the Policy directly if it can demonstrate that it is a third-party beneficiary.  *Advanced Ground Sys. Eng'g, Inc. v. RTW Indust., Inc.*, 388 F.3d 1036, 1043 (7th Cir. 2004) (citing *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001)).  To demonstrate third-party beneficiary status,

> one must show (1) a clear intent by the actual parties to the contract to benefit the third party, (2) a duty imposed on one of the contracting parties in favor of the third party, and (3) the necessity of performance of the terms of the contract in order to render a direct benefit to that third party.

*Id.* (citing *Luhnow*, 760 N.E.2d at 628).   "[T]he intent to benefit the third party is the controlling factor and may be shown by specifically naming the third party or by other evidence." *Luhnow*, 760 N.E.2d at 628.

The Policy does not name Plaintiff specifically nor certificateholders as a class, thus Plaintiff must rely on "other evidence" to demonstrate Triad's and the Trustee's intent to benefit Plaintiff. *See Id.*   Plaintiff argues that it was a third-party beneficiary to the Policy because the Policy "was procured to ultimately protect [Plaintiff's] investment as well as other certificateholders who made up a class of individuals intended to benefit from the policy."  Pl.'s Resp. to Triad at 4.   However, even assuming that the Trustee purchased the Policy to fulfill its duties to the certificateholders and to promote their interests, the Trustee's actions do not demonstrate the requisite intent for third-party beneficiary standing:

> The intent necessary to the third-party's right to sue is not a desire or purpose to confer a particular benefit upon the third-party nor a desire to advance his interest or promote his welfare, but an intent that the promising party or parties shall assume a direct obligation to him.

*Centenial Mortgage, Inc. v. Blumenfeld*, 745 N.E.2d 268, 275-76 (Ind. Ct. App. 2001).   Under the Policy, Triad's obligations are to the Trustee only.  Compl. Ex. E.  Thus, even though the Policy may have been purchased for the benefit of future certificateholders, Triad did not "assume a direct obligation to [Plaintiff]."  *Id.*  The Complaint's allegations, therefore, do not support a finding that Triad assumed a direct obligation to Plaintiff, or conferred upon Plaintiff the power to enforce the Policy.  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted.  *See* Fed.

R. Civ. Proc. 12(b)(6).  Triad's Motion to Dismiss Count VIII is **GRANTED**.[9]  Count VIII is hereby

**DISMISSED**.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, defendants', Credit Suisse First Boston Corporation, a/k/a Credit

Suisse Securities (USA) LLC, Credit Suisse First Boston Mortgage Securities Corporation, DLJ

Mortgage Capital, Inc., and Select Portfolio Servicing, Motion to Dismiss is **GRANTED in part**

**and DENIED in part**.  Defendant's, The Bank of New York, Motion to Dismiss is **GRANTED in**

**part and DENIED in part**.  Defendant's, Triad Guaranty Insurance Corporation, Motion to Dismiss

is **GRANTED**.

Accordingly, Counts II, IV, VI, VIII, IX, X, XIII, XIV, XVI, XVII, and XVIII are hereby

**DISMISSED**.

IT IS SO ORDERED this 24th day of September, 2008.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

---

[9] The Court notes that Triad was dismissed from a third-party beneficiary claim under nearly identical circumstances by district courts in Florida on April 22, 2008, and the Northern District of Indiana on May 13, 2008.  *See Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, No. 8:07-cv-00690, 2008 WL 1817294 (M.D. Fla. Apr. 22, 2008); *Am. Fed. Savings Bank v. Credit Suisse First Boston Corp.*, No. 3:07-cv-302, 2008 WL 2062772 (N.D. Ind. May 13, 2008).  The district court in *Bankers Life* also considered many of the same issues with respect to the Credit Suisse Defendants and BNY that the Court considered herein.  Where the Court concludes differently than the court in that case, the Court respectfully disagrees for the reasons stated herein.

Distribution to:

Thomas K. Caldwell
MADDOX HARGETT & CARUSO, PC
tkcaldwell@mhclaw.com

Thomas J. Cunningham
LOCK LORD BISSELL & LIDDELL, LLP
tcunningham@lockelord.com

George Robert DeLoach Jr.
LEDBETTER & ASSOCIATES P.A.
gdeloach@dlsecuritieslaw.com

John P. Doherty
THACHER PROFFITT & WOOD LLP
jdoherty@tpw.com

Scott E. Eckas
MCKEE NELSON, LLP
seckas@mckeenelson.com

Simon A. Fleischmann
LOCK LORD BISSELL & LIDDELL, LLP
sfleischmann@lockelord.com

Richard F. Hans
THACHER PROFFITT & WOOD LLP
rhans@tpw.com

Shannon D. Landreth
BINGHAM MCHALE LLP
slandreth@binghammchale.com

Dale  Ledbetter
LEDBETTER & ASSOCIATES P.A.
dledbetter@dlsecuritieslaw.com

Mark E. Maddox
MADDOX HARGETT & CARUSO, PC
mmaddox@mhclaw.com

Lee B. McTurnan
BINGHAM MCHALE LLP
lmcturnan@binghammchale.com

Coleen J. O'Loughlin
MCKEE NELSON, LLP
coloughlin@mckeenelson.com

Robert  Palmer
MAY OBERFELL AND LORBER
rpalmer@maylorber.com

Phillip Russell Perdew
LOCK LORD BISSELL & LIDDELL, LLP
pperdew@lockelord.com

Jeffrey Q. Smith
MCKEE NELSON, LLP
jqsmith@mckeenelson.com

Andrew B. Zinman
THACHER PROFFITT & WOOD LLP
azinman@tpw.com